226

1    WEDNESDAY, SEPTEMBER 13, 2017, MORNING SESSION

2    --oOo--

3    The matter of the People of the State of

4    California versus Todd Christian Robben, Defendant, Case

5    Number P17CRF0114, came on regularly this day before

6    Honorable Steve White, Assigned Judge of the Superior

7    Court of the State of California, for the County of

8    El Dorado, Department 21 of Sacramento Superior Court.

9    The People were represented by Dale Gomes,

10   Deputy District Attorney for the County of El Dorado.

11   The Defendant was represented by Russell

12   Miller, Attorney at Law.

13   The following proceedings were then had:

14   THE BAILIFF:  Come to order.  Department 21 is

15   now in session.

16   THE COURT:  Good morning.

17   In the matter of the People of the State of

18   California versus Todd Robben, P17CRF0114, the record

19   will show that Mr. Robben is present with his counsel

20   Mr. Miller.  Mr. Gomes is here on behalf of the People.

21   There is a jury panel in the hallway, but

22   before we bring them in, I want to address some pending

23   issues:

24   One is the Defendant's motion for dismissal

25   pursuant to 1382 of the Penal Code.

26   Is that matter submitted?

27   MR. GOMES:  Yes.

28   MR. MILLER:  Unless there's questions by the

In re TODD ROBBEN  -  Petition for writ of habeas corpus        489

227

1    Court, it's submitted.

2         THE COURT:  All right.  The motion is denied.

3         It's not well-founded.  The delays and

4    continuances which are offered in terms of the timetable

5    are almost entirely the consequence of the Defendant's

6    actions, delaying matters to litigate collateral issues,

7    and there is no legal basis or factual basis for

8    granting of that motion.

9         It is denied.

10        There was another issue that was raised

11   yesterday by Mr. Miller, raised with this judge by

12   Mr. Miller yesterday, having to do with whether the

13   jurors should be selected from an El Dorado County

14   venire rather than Sacramento County since this is an

15   El Dorado County case.

16        I researched this matter to large extent last

17   night and have concluded that there isn't a problem

18   presented by a Sacramento panel being used rather than

19   an El Dorado panel being used, and my primary and very

20   short summary, Counsel, on that is that this is not a

21   jurisdictional issue.  There may be a venue issue, which

22   I am having researched further, but that venue issue

23   does not preclude the Court from selecting a jury from a

24   Sacramento citizenry as opposed to El Dorado citizenry.

25        But I am having this matter -- my own research

26   on it reviewed, and this matter is also being addressed

27   with the judicial council, which is the body by which

28   the case was transferred to Sacramento County to have

# D.A. CONFLICT-OF-INTEREST  VIOLATED U.S. 14TH AMENDMENT & IAC

Mr. Miller's IAC/CDC is also evident on his other haphazardly written motion to disqualify the entire El Dorado D.A. office pursuant to PC 1424 where he cites wrong case law and cites civil code 128 and filed the motion well past any meaningful timeframe, and he failed to comply with PC 1424 and mail the State Attorney General 10 court days before the motion was to be heard, or properly and timely serve the D.A.

Mr. Miller should have also included the U.S. 14th amendment due-process violation and Discriminatory prosecution constitutes adequate grounds for reversing a conviction *(People v. Winters, (1959)171 Cal. App.2d Supp. 876, 878 [342 P.2d 538]*) when the defendant proves: "(1) `that he has been deliberately singled out for prosecution on the basis of some invidious criterion;' and (2) that `the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities.'" *People v. Superior Court (Hartway), 562 P. 2d 1315 - Cal: Supreme Court 1977* . Retaliatory, Selective & Vindictive prosecution were also a proper issues (U.S. 14th due-process & equal protection) since this was a clear set of cases based on perjury, fabricated evidence, knowledge the Petitioner was innocent and retaliation for the filing of lawsuits, complaints, protests, recalls, etc. This court will see that this Petitioner was clearly convicted on false charges and given the maximum upper term sentences for minor crimes.  Petitioner was sentenced to the maximum 18 months for the alleged driving on a suspended license case # S16CRM0096 for a first time offence!  Petitioner received the maximum upper term sentence in case # P17CRF0114 when the charges were non-violent "wobblers" (could be misdemeanors) and Petitioner had no prior felonies or prison history.

In *People v. Vasquez, 137 P. 3d 199 - Cal: Supreme Court 2006*:

> As we explained at length in Eubanks, public prosecutors in California are required to exercise their discretionary functions, which are broad in scope and subject to only limited review, "`with the highest degree of integrity and impartiality.'" (Eubanks, supra, 14 Cal.4th at p. 589, 59 Cal.Rptr.2d 200, 927 P.2d 310, quoting People v. Superior Court (Greer) (1977) 19 Cal.3d 255, 267, 137 Cal.Rptr. 476, 561 P.2d 1164.) **Impartiality, in this context, means not that the prosecutor is indifferent to the conviction or acquittal of the defendant—the prosecutor does not share in the neutrality expected of the judge and jury—but that the prosecutor is "expected to**

**exercise his or her discretionary functions in the interests of the People at large, and not under the influence or control of an interested individual."** (Eubanks, at p. 590, 59 Cal.Rptr.2d 200, 927 P.2d 310.) **The public prosecutor's proper interest "`"is not that it shall win a case, but that justice shall be done."'"** (Id. at p. 589, 59 Cal.Rptr.2d 200, 927 P.2d 310.)

In section 1424, the Legislature established a substantive test for a motion to disqualify the district attorney: "The motion may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." The statute demands a showing of a real, not merely apparent, potential for unfair treatment, and further requires that that potential "rise to the level of a likelihood of unfairness." (Eubanks, supra, 14 Cal.4th at p. 592, 59 Cal.Rptr.2d 200, 927 P.2d 310.) ==Although the statute refers to a "fair trial," we have recognized that many of the prosecutor's critical discretionary choices are made before or after trial and have hence interpreted section 1424 as requiring recusal on a showing of a conflict of interest "`so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.'"== (Eubanks, at p. 593, 59 Cal.Rptr.2d 200, 927 P.2d 310, quoting People v. Conner, supra, 34 Cal.3d at p. 148, 193 Cal.Rptr. 148, 666 P.2d 5.)

Below is an article from the Placerville newspaper where D.D.A. Dale Gomes used the platform to express his support for his boss, D.A. Vern Pierson who has direct influence over D.D.A. Gomes.



# Mountain Democrat

# Vern Pierson seeking  another term as DA

**By Pat Lakey**

He has put the likes of Phillip and Nancy Garrido behind bars for kidnapping an 11-year-old Jaycee Dugard and holding her for years that included repeated sexual assault.

He has argued before the court that the man who ran down Placerville California Highway Patrol officer Scott Russell deserved to die — and that's the verdict the jury rendered against David Zanon.

He has looked after his staff of crack attorneys and investigators, along with support staff, by putting them into a building that fits their caliber, quarters he worked hard to bring to reality.

Now El Dorado County District Attorney Vern Pierson wants more time to continue doing the job he treats with passion. He is seeking re-election in June to the post he has held since 2007.

Read more:  **https://www.mtdemocrat.com/news/vern-pierson-seeking-another-term-as-da/**

# Discussion │ 10 comments

- **John C.Garon** April 08, 2018 - 11:31 pm

Pierson is a long-time GOP hack who has always put his career and party ahead of long-term improvements in the DA's office. It's time for those who believe in term limits to put their actions where their mouth is.

Reply  Report abusive comment

- **Dale R Gomes** April 09, 2018 - 5:43 pm

Mr. Garon with all due respect you could not be more wrong. What exactly is it that you think you know about my DA's office? Have you ever even been inside the building? Were you ever inside the building before Vern Pierson took over? Do you have any idea what the District Attorney's Office does? Do you have any idea how much this District Attorney's Office has changed for the better under the leadership of Vern Pierson? Your commentary suggests that all of these questions are merely rhotorical. You clearly have no idea what you are talking about. Come on over to my office. Introduce yourself and lets talk about the incredible progress this DA's Office

has made over the past 11 years. That is, unless you are more interested in partisanship than you are in the truth. Dale Gomes Deputy District Attorney

- **Richard** April 11, 2018 - 1:43 pm

  Why of course Gomes, "come on over to my office", "let's talk". This seems to be the problem with young political motivated bullies. You believe your superior, your snobbish, rude and absolutely arrogant. You don't care about your day to day obligation to the people of El Dorado County or where ethical lines are drawn. Using County facilities and time to pursue a political agenda is obviously just fine with you. And Gomes, using veterans, non-profits that help children as a vehicle to promote anyone's re- election, just makes me sick. Having attend the events you site, and having set the bench mark for raising money for veterans, it makes me doubly sick. Where I'm not planning to vote for Vern because of his affiliations with Trump/McClintock, do Vern a favor, don't write another thing at work having to do with anyone's re-election campaign.

Mr. could have easily contacted the other people, namely Dan Dellinger to testify or file affidavits that this Petitioner attended meetings about the 2016 recall to remove D,A. Vern Pierson from office and this Petitioner was paid by the recall effort and created the recall website https://neighborsagainstcorruption.wordpress.com/. This Petitioner did sign the actual petition and even attempted to gather signatures in South Lake Tahoe before being arrested in 2016 in the S16CRM0096 case. The Petitioner did not sign the initial petition sent to the County Recorders office since he lived in Tuolumne County and his signature was not required since there were enough signatures to initiate the recall – Petitioner's signature was not required.

**An example of the e-mail exchanges between Petitioner and Dan Dellinger:**













# Neighbors Against Corruption

"The only thing necessary for the triumph of evil is for good men to do nothing"
Sir Edmond Burke, 18th Century Statesman

About

---

## About Neighbors Against Corruption

Posted on February 5, 2016







Neighbor...
118 likes

Hers - Auditor Controller
And
Vern Pierson - District Attorney &
Chief Technology Officer

Liked

You and 1 other friend likes this

**Blog Stats**
- 3,659 hits

**Welcome**

Contact: edcneighborsagainstcorruption@gmail.com

Thank you for taking time out of your busy schedule to exercise your civic duty to learn about our County Government and the people we, as voters, selected to oversee and manage our local government.

Like you, we want them managing our County government in an honest manner to impartially provide the services we expect and demand.

**Donate Today – Please Mail Completed Petitions and Contributions to:**

Neighbors Against Corruption P.O. Box 268 Shingle Springs, CA 95682

FPPC # pending

## CLICK HERE : Directions for Vern Pierson and Joe Harn recall petition

**Don't be afraid to sign the petitions.** Government Code §6253.5 provides that the recall petitions: "shall not be deemed to be public records and shall not be open to inspection except by the public officer or public employees who have the duty of receiving, examining or preserving the petitions."

**Recent Posts**
- FIGHTING THE SOUTH LAKE TAHOE COPS FOR DUE PROCESS RIGHTS
- Ninth Circuit Panel Suggests Perjury Prosecution For Lying Prosecutors like Vern Pierson
- MUST SEE VIDEO: Ray Nutting Talks about the Recall election of Vern Pierson and Joe Harn
- Directions for Vern Pierson and Joe Harn recall petition
- Vern Pierson & Joe Harn recall efforts in the news
- About Neighbors Against Corruption

**Recent Comments**

El Dorado County Nei... on Ninth Circuit Panel Suggests P...

**Top Clicks**
- None

**Archives**
- April 2016
- March 2016
- February 2016









In re TODD ROBBEN  -  Petition for writ of habeas corpus          497

# Mountain Democrat



# DA also on recall list

**By <u>Amanda Williams</u>**

https://www.mtdemocrat.com/news/da-also-on-recall-list/

Efforts to recall El Dorado County District Attorney Vern Pierson are under way.

The county Elections Department received and verified 20 signatures supporting the recall. The notice of intent to circulate a recall petition and affidavit of service was given to Elections officials on Nov. 24.

The proponents of the petition list the grounds for recall as: "We the voters are seeking relief from the tyranny of our elected officials who have engaged in malfeasant acts and corrupt practices, including but not limited to abusing power and resources of office to pursue criminal prosecutions and civil litigation against innocent persons and businesses for personal and political reasons such as generating career building publicity and punishing political enemies; participating in an immoral scheme whereby some county elected officials receive

non-performance bonuses ...; participating in an immoral scheme whereby the district attorney receives extra pay as county chief technology officer, thereby gaining access to all e-mail messages moving through the county Internet system, including the Public Defender's Office; and abusing court rules to discredit judges for personal and political reasons."

The notice was served by former El Dorado County Interim IT director Kelly Webb and had many of the same signatures that appeared on the notice given to El Dorado County Auditor-Controller Joe Harn. All five El Dorado County supervisors also received notices of intent to circulate recall petitions.

Seven days later the Elections Department received Pierson's argument against the recall action, which pointedly singles out one of the recall proponents, Cris Alarcon.

"For almost nine years it's been an honor to serve as your district attorney. The men and women of El Dorado County law enforcement continue to admirably serve the people of this county. I am particularly proud of everyone in the District Attorney's Office," Pierson wrote. "From holding murderers and other criminals accountable to building one of the first paperless prosecutor offices, they are second to none.

"Criminals, however, don't like to be held to account. After serving as chair of the county Charter Review Committee, Cris Alarcon was stopped by a sheriff's deputy. Alarcon gave the deputy an Arizona license and claimed to be an Arizona resident. The plate tag on his car was stolen from his elderly neighbor. His wife admitted he did it to avoid license and registration," the district attorney continued. "My office convicted him of multiple charges, including receiving stolen property, driving on a revoked license and false registration. Last year I was re-elected by a margin of 3 to 1. My opponent, a Placer County resident, claimed to live with Alarcon. Now this vengeful criminal seeks to waste thousands of your tax dollars on this bogus recall campaign. Don't be conned by this criminal!"

Alarcon pleaded no contest to nine charges in July 2012, including receiving stolen goods-a vehicle registration tag, driving on a suspended or revoked license, displaying false registration on a vehicle, driving without insurance and not having current registration. Five additional charges were dropped, and the charge of receiving stolen goods, a felony, was downgraded to a misdemeanor. Alarcon was sentenced to four years summary probation and was directed to pay fines of up to $6,516 in sequence for three different incidents and obey search and seizure terms that were applied to the case.

Civil charges were also filed against Alarcon and Dan Dellinger, another recall proponent, by the District Attorney's Office in 2012, "on suspicion of fraudulently obtaining taxpayer financed contracts with the Pioneer Fire Protection District related to illegal campaign activity to expressly advocate a position in favor of the passage of a tax increase (Ballot Measure F), which voters approved in November 2011."

The El Dorado County Elections Department must receive approximately 10,625 valid signatures by the 160-day deadline to place the recall on the June 2016 ballot. Pierson was first elected as district attorney in 2006, and is up for re-election in 2018.





## D.A Vern Pierson & El Dorado County Auditor-Controller Joe Harn gets recall notice

By Chris Daley

https://www.villagelife.com/news/harn-gets-recall-notice/

El Dorado County Auditor-Controller Joe Harn has received a Notice of Intention to Circulate Recall Petition.

Recall proponents cite five issues from which they are "seeking relief from the tyranny of our elected officials who have engaged in malfeasant acts and corrupt practices."

Citing a violation of California State Penal Code, the notice states that Harn failed "to make authorized payments for reasons of personal or political motivation." A second charge reads: "Failure to produce and submit required county bill payment disclosure reports to the Board of Supervisors in violation of County Ordinance Code …"

Revisiting an issue controversial two years ago, proponents claim Harn engaged in "an immoral scheme" in which certain elected officials received additional pay and pension benefits for reasons such as "simply being re-elected or possessing the certificates required to hold office." The latter refers to Harn's having a Certified Public Accountant license.

The notice also states that the auditor-controller failed "to protect the fiscal integrity of the county by willfully refusing to prepare a complete Cost Allocation Plan."

Finally, proponents charge Harn with "engaging in inappropriate conduct" such as "harassment of employees, vendors and staff of other agencies."

In an e-mail to Village Life Harn wrote, "Being county auditor-controller is a lot like being an umpire. I do my best to call the balls and strikes fairly. I don't vote on the budget. I don't write county policies. I don't write state law regarding county spending. I do have a duty to point out cases where the county attempts to spend money in violation of our policies or state law. Occasionally people get mad at the umpire. I am not surprised that there are 20 people who want me out of office."

In order to file a Notice of Intention to Circulate Recall Petition, proponents must secure at least 20 signatures from resident voters.

Former county Information Technologies acting and interim director Kelly Webb, the primary proponent of the recall effort, sent the notice to Harn by certified mail Nov. 24.

The retired county employee is currently suing the county for discrimination, and names Harn in her lawsuit, along with El Dorado County's District Attorney Vern Pierson and Human Resources Director Pamela Knorr. Webb alleges that the three conspired to remove her from her position in Information Technologies and demote her back to her previous position as a CAO analyst. Pierson was later appointed to oversee Information Technologies.

As interim IT director, Webb was also directly involved in the Cost Allocation Plan — the topic of a recent El Dorado County Grand Jury report. According to information provided by the Auditor-Controller's Office, it was Webb's inexperience keeping the appropriate billing records and time sheets that created problems with the CAP.

Harn told Village Life Thursday that he filed a response with the Elections Department Dec. 1, and served his document to Webb via certified mail.

As permitted under state Elections Code regarding recall, the elected official may make a formal response of not more than 200 words within seven days of receiving the notice.

In information shared with Village Life, Harn focused on several achievements related to "protecting tax dollars and ensuring our county stays debt-free." He writes that he has "strongly opposed reckless spending and borrowing ..." and convinced the Board of Supervisors not to adopt "the most expensive Cadillac retirement plans plaguing nearby government agencies."

His response continues, "Without reservation, I've insisted that big, out-of-county developers pay their fair share for road improvements and libraries — or go develop elsewhere."

He concludes by noting that in 2013 he successfully advised the Board of Supervisors to reduce the county's share of Department of Motor Vehicle fees thereby reducing residents' overall DMV fees.

Once the Notice of Intention to Circulate Recall Petition has been validated and certified by the county Elections Department, Elections Code allows proponents 120 days to circulate the countywide petition to acquire signatures from 10,625 resident, registered voters in order to move the petition onto a countywide ballot.

"However, they will need to collect more than that to turn in since some might be rejected," Registrar of Voters Bill Schultz wrote in an e-mail to Village Life.

The larger petition must include greater detail with more specific charges and/or allegations. The Elections Department must validate and then certify the documents within a time frame of 88 to 125 days before the next election — June 2016.

When discussing the recall petitions served to the five county supervisors in October, Assistant Registrar of Voters Linda Webster told Village Life that her staff would go through the petition "line by line" and check all relevant statements. If corrections are needed, Webster said her office will send it back to the proponents.



## MUST SEE VIDEO CORRUPTION IN EL DORADO COUNTY: RAY NUTTING TALKS ABOUT THE RECALL ELECTION OF VERN PIERSON AND JOE HARN



Posted on *February 21, 2016* under *Uncategorized*, *vern pierson*





Ray Nutting's interview can be watch here: https://www.youtube.com/watch?v=G0h1QikNBtA

## *WHY SHOULD WE RECALL OUR AUDITOR-CONTROLLER & DISTRICT ATTORNEY?*

Every person we elect to public office works for "the people" – us. We pay their lavish salaries and expect them to work hard on our behalf. Unfortunately, some elected officials turn out badly and need to be fired. Here are just a few of the reasons some of us think Auditor-Controller Joe Harn and District Attorney Vern Pierson should be fired:



**Auditor-Controller Joe Harn & His Corrupt Practices –**
- **Auditor Controller Joe Harn Petition for Recall: <u>harn-petition-for-recall-letter</u>**

Failure to make authorized payments for reasons of personal and political motivation in violation of California State Penal Code Sections 424 and 425.
- Participating in an immoral scheme whereby some County Elected Officials receive non-performance bonuses increasing the amount of both their six figure base salaries and retirement pensions for reasons such as simply being re-elected or possessing the certificates required to hold office. Failure to protect the fiscal integrity of the County by willfully refusing to prepare a complete Cost Allocation Plan.
- Failure to produce and submit required County bill payment disclosure reports to the Board of Supervisors in violation of County Ordinance Code Sections 3.16.130 and 3.16.140.

- Engaging in inappropriate conduct including: harassment, bullying, and disrespectful conduct towards County employees, vendors, and staff of other agencies.



**District Attorney Vern Pierson & His Corrupt Practices –**
- **District Attorney Vern Pierson Petition for Recall: pierson-petition-for-recall-letter**

Abusing the power and resources of office to pursue criminal prosecutions and civil litigation against innocent persons and businesses for personal and political reasons, such as, generating career building publicity and punishing political enemies.

- Participating in an immoral scheme whereby some County Elected Officials receive non-performance bonuses increasing the amount of both their six figure base salaries and retirement pensions for reasons such as simply being re-elected or possessing the certificates required to hold office.
- Participating in an immoral scheme whereby the District Attorney receives extra pay ($104.00 per hour) as "County Chief Technology Officer", thereby gaining access to all e-mail messages moving through the County internet system including the Public Defender's Office.
- Abusing court rules to discredit Judges for personal and political reasons.
- Failing to impanel a Criminal Grand Jury to investigate his political ally Auditor-Controller Joe Harn for official misconduct to determine if Harn

should be removed from office as recommended by the 2014-15 Civil Grand Jury in their report "Putting Political Gain Over What's Right For The County".

If you agree that we as citizens should fire Joe Harn and Vern Pierson for their corrupt practices and bad behavior, then please help us get the 10,626 signatures we need to exercise our civil rights by placing their recall election on the ballot by signing and circulating both official recall petitions with your friends and neighbors!

Some of our local community leaders who have experience successfully qualifying ballot measures in our County are joining forces with another community group and are starting a recall of all 5 EDC supervisors now.  I don't not have much detail yet.

These leaders contacted me this weekend because they are also tired of the corruption and **want to circulate recall petitions against both Joe Harn and Vern Pierson at the same time** and asked me if I would help with the Pierson & Harn recall effort only.  So I am writing to you to see if you are interested in working on the Pierson & Harn portion of this recall, not the others at this time. Things are moving very quickly!!!
**Please follow these directions carefully:**

**Step 1: Who can sign a Petition?**
Any registered voter can sign a Recall Petition for the countywide positions of District Attorney and Auditor.  If you need assistance with determining whether or not you are a registered voter, you may call the Elections Department during normal business hours: (530) 621-7480

**Step 2: Click and Print the Petitions:**

**Step 3: Complete the numbered signature blocks**
- Print your name and residence address, as you are registered to vote.
- Sign your signature underneath your printed name, and print the name of the city in which you live and your zip code.
- Do **not** use "ditto marks" anywhere on the Petition.

- You do not have to fill in all of the signature blocks for the petition to be valid. You may submit your petition with as few as one completed signature block.

**Step 4: Mail to: Neighbors Against Corruption, P.O. Box 268, Shingle Springs, CA 95682**





## BODY CAMERAS ON EVERY PLACERVILLE OFFICER (SLTPD NEXT?) THEY NEED THIS

Posted on *April 23, 2016* under *Uncategorized*





  

*2011–2014 SALARIES FOR SOUTH LAKE TAHOE*

*1,240 EMPLOYEE RECORDS FOUND – PAGE 1 OF 25*

Download records  |  View cost per resident, median pay and more  |  View all agencies

Search within these records:

Year
2014



| Name | Job title | Regular pay | Overtime pay | Other pay | Total benefits | Total pay & benefits |
|---|---|---|---|---|---|---|
| GSTETTENBAUER, GREGORY S | Division Chief<br>South Lake Tahoe, 2011 | $101,840.90 | $0.00 | $82,039.15 | $76,428.16 | $260,308.21 |
| Jeffrey S Reagan | POLICE SERGEANT<br>South Lake Tahoe, | $91,555.14 | $47,652.28 | $32,325.72 | $81,900.41 | $253,433.55 |

| Shannon J Laney | POLICE SERGEANT South Lake Tahoe, 2013 | $88,017.83 | $16,345.99 | $22,793.90 | $74,002.64 | $201,160.36 |
| ADLER, JOSHUA H | POLICE SERGEANT South Lake Tahoe, 2012 | $88,017.83 | $14,760.15 | $23,839.29 | $70,486.07 | $197,103.34 |



# FORMER SLTPD JOHNNY POLAND OFFICER RECEIVES 18-MONTH PRISON SENTENCE

Posted on *September 11, 2013* by *agent provocateur* under *South Lake Tahoe Police Corruption*



Johnny Gerald Poland, 45, a former South Lake Tahoe police officer, was sentenced Wednesday to 18 months in prison for one count of obstruction of an official proceeding, according to a U.S. Department of Justice news release.

Poland pleaded guilty in May to the one federal obstruction charge.

A federal complaint was issued Jan. 22 by Christopher Campion, a special agent of the Federal Bureau of Investigation, citing Poland with five federal obstruction charges.



1 | RUSSELL W. MILLER JR., SBN 187728
MILLER LAW GROUP
2 | Attorneys at Law
901 H STREET, SUITE 612
3 | SACRAMENTO, CA 95814
Telephone:  (916) 447 7223
4 | Facsimile:  (916) 447 3406

**FILED**

**JUL 2 7 2017**

BY: _____

5 | Attorney for Defendant
TODD ROBBEN

6

7

8 |                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |                         IN AND FOR THE COUNTY OF EL DORADO

10

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) Case No.: P17CRF0114 |
| | ) |
| Plaintiff, | ) NOTICE OF MOTION TO DISQUALIFY |
| | ) PROSECUTING ATTORNEY |
| v | ) |
| | ) |
| TODD ROBBEN, | ) Date:TBD |
| | ) Time:TBD |
| Defendant. | ) Dept:21 |
| | ) Trial Date:8/14/17 |
| | ) |
| _____ | ) |

TO THE DISTRICT ATTORNEY OF EL DORADO COUNTY AND/OR HIS REPRESENTATIVE:

        PLEASE TAKE NOTICE that on _____, 2017, at _____ or as

soon thereafter as the matter may be heard in Department 21 of the above-

entitled court, Defendant TODD ROBBEN will move for an order disqualifying

Deputy District Attorney Dale Gomes and the entire El Dorado County District

Attorney's office from the prosecution of the above entitled matter.

        This motion will be made on the grounds that the defendant will be

denied the statutory right to a fair and unbiased prosecution of his matter.

        The motion will be based on this notice of motion, on the memorandum of

points and authorities served and filed herewith, on the records on file in

People v. ROBBEN            Notice of Motion            Case No. P17CRF0114

282

1 | this action and on such oral and documentary evidence as may be presented at

2 | the hearing of the motion.

3 | Dated: 24 July 2017



4 | RUSSELL W. MILLER, JR.
Attorney for Defendant
TODD ROBBEN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

People v. ROBBEN            Notice of Motion            Case No. P17CRF0114

283

```
1  RUSSELL W. MILLER JR., SBN 187728
   MILLER LAW GROUP
2  Attorneys at Law
   901 H STREET, SUITE 612
3  SACRAMENTO, CA 95814
   Telephone:  (916) 447 7223
4  Facsimile:  (916) 447 3406

5  Attorney for Defendant
   TODD ROBBEN
6

7
                 IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                     IN AND FOR THE COUNTY OF EL DORADO
9

10
   PEOPLE OF THE STATE OF          )  Case No.:  P17CRF0114
11 CALIFORNIA,                     )
                                   )  POINTS AND AUTHORITIES IN SUPPORT OF
12     Plaintiff,                  )  MOTION TO DISQUALIFY PROSECUTING
                                   )  ATTORNEY
13 v                              )
                                   )
14 TODD ROBBEN,                    )
                                   )  Date:TBD
15     Defendant.                  )  Time:TBD
                                   )  Dept:21
16 _____   )  Trial Date:8/14/17

17

18     Defendant submits the following memorandum of points and authorities in

19 support of the motion to disqualify the prosecuting attorney:

20                                  I

21            THE COURT HAS BOTH THE STATUTORY AND

22          CONSTITUTIONAL POWER TO DISQUALIFY THE

23                 PROSECUTING ATTORNEY

24     In People v Superior Court of Contra Costa County (1977) 19 Calk 3d 255

25 at 261 n4, the Supreme Court explained the bases for a trial court's power to

   disqualify the prosecuting attorney:
```

People v. ROBBEN            Points & Authorities            Case No. P17CRF0114

284

1   "Section 128 of the Code of Civil Procedure provides in part, 'Every

2   court shall have power: ...5. To control, in furtherance of justice, the

3   conduct of its ministerial officers, and of all other persons in any manner

4   connected with a juridical proceeding before it, in every matter appertaining

    thereto ...' Although in civil cases the disqualification power of the trial

5   court has been only suggestively traced to section 128 [citation omitted],

6   the purpose and text of the statute are broad enough to encompass such a

7   power. Furthermore, section 128 has been applied to criminal as well as

8   civil cases."

9        This power of the court was further defended by the appellate court in

10  *People v Municipal Court for Santa Monica Judicial Dist.* (1978, 2nd Dist) 77

11  Cal App 3d 294 at 298-299.

12       "The power to bar a duly authorized prosecutor or prosecuting agency

    from participation in a particular case exists only 'in appropriate

13  circumstances.' ... If such circumstances are present, or there is an undue

14  appearance of their presence, then a trial court acts within it discretion if

15  I bars the prosecutor from participation in the criminal proceeding."

16                                        II

17                  A CONFLICT OF INTEREST EXISTS WHEN A

18                    PROSECUTOR SUFFERS FROM PREJUDICE

19                  AGAISNT THE DEFENDANT WHICH AFFECTS,

20                     OR APPEARS TO AFFECT, HIS ABILITY

21                  TO PERFORM HIS FUNCTIONS IMPARTIALLY

         After holding that a conflict of interest existed where the mother of a

22  homicide victim is employed in the same district attorney's office in which

23  the prosecution was being prepared, the court in *People v Superior Court of*

24  *Contra Costa County* (1977) 19 Cal 3d 255 at 267, n8 stated:

25       "The preservation of prosecutorial impartiality is perhaps most

    important during the charging process, the phase of a criminal proceeding

People v. ROBBEN            Points & Authorities          Case No. P17CRF0114

                                                                      285

when the prosecutor' discretion is most apparent. As the court in Pellegrino noted, 'the theme which runs throughout the criminal procedure in this state is that all persons should be protected from having to defend against frivolous prosecutions, and that one major safeguard against such prosecutions is the function of the district attorney in screening criminal cases prior to instituting a prosecution.' [Citations omitted.] Surely an essential aspect of this safeguard must be the prosecutor's freedom from any personal or emotional involvement in a controversy which might bias his objective exercise of judgment."

In *People v Conner* (1983) 34 Cal 3d 141 at 148-149, the Supreme Court explained the meaning of the term "conflict" within the provisions of Penal Code §1424.

"In our view a 'conflict,' within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the [prosecution] … may not exercise its discretionary function in an evenhanded manner. Thus, there is no need to determine whether a conflict is 'actual,' or only gives an 'appearance' of conflict."

The Supreme Court also concluded that the protection of prosecutorial impartiality is a major purpose of the court's power of recusal. Even under Penal Code §1424, it may be appropriate to recuse an entire prosecutorial office where there is substantial evidence that a particular deputy's animosity toward the accused may affect his or her colleagues.

Dated: 7-24-17

RUSSELL W. MILLER, JR.
Attorney for Defendant
TODD ROBBEN

People v. ROBBEN        Points & Authorities        Case No. P17CRF0114

286

In re TODD ROBBEN - Petition for writ of habeas corpus        514

1    RUSSELL W. MILLER JR., SBN 187728
     MILLER LAW GROUP
2    Attorneys at Law
     901 H STREET, SUITE 612
3    SACRAMENTO, CA 95814
     Telephone: (916) 447 7223
4    Facsimile: (916) 447 3406

5    Attorney for Defendant
     TODD ROBBEN

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

              IN AND FOR THE COUNTY OF EL DORADO

9

10

11    PEOPLE OF THE STATE OF        )   Case No.:   P17CRF0114
     CALIFORNIA,                  )

12                             )   DECLARATION IN SUPPORT OF MOTION TO
         Plaintiff,         )   DISQUALIFY PROSECUTING ATTORNEY

13                             )
     v                               )

14    TODD ROBBEN,              )
                            )

15          Defendant.         )
                            )

16    _____ )

17

18        I, Russell W. Miller Jr., declare:

19        I am the attorney representing the defendant, Todd Robben, in the
     above-entitled action.

20    The following facts exist that create a conflict of interest between the

21    Office of the District Attorney and the defendant such as would render it

22    unlikely that the defendant would receive a fair trial:

23        1. The defendant has filed an action against the District Attorney of

24           El Dorado County, Mr. Vern Pierson in U. S. Federal Court. The suit

25           is under review by the Eastern District of California Federal
          District Court in Sacramento, California.

   People v. ROBBEN           Notice of Motion       Case No. P17CRF0114

2.  The defendant has filed an action against Deputy District Attorney of El Dorado County, Mr. Dale Gomes in U. S. Federal Court. The suit is under review by the Eastern District of California Federal District Court in Sacramento, California.

3.  The defendant has filed an action against the entire District Attorney's Office of El Dorado County in U. S. Federal Court. Specifically, the Clerk of the Court in and for El Dorado County. The suit is under review by the Eastern District of California Federal District Court in Sacramento, California.

4.  The defendant has filed an action against the entire the Honorable James Wagoner and the Honorable Daniel Proud judges of the El Dorado County Superior Court in U. S. Federal Court. Specifically, the Clerk of the Court in and for El Dorado County. The suit is under review by the Eastern District of California Federal District Court in Sacramento, California.

5.  The entire Judicial Bench of El Dorado County did recuse themselves in light of issues arising from this prosecution.

6.  The El Dorado judiciary, the District Attorney's Office of Eldorado County and the City Attorney of South Lake Tahoe have a closed and long standing working and personal relationship.

7.  Mr. Thomas Watson, City Attorney for South Lake Tahoe, is a named alleged victim in the present matter.

8.  The defendant has filed complaints against Mr. Vern Pierson and Mr. Dale Gomes with the State Bar Association.

9.  The defendant has filed numerous complaints against numerous El Dorado County officials with the Federal Bureau of Investigation.

10.  The defendant belongs to Neighbors Against Corruption specifically naming the El Dorado County District Attorney and County Auditor Joe Harn.

People v. ROBBEN                 Notice of Motion              Case No. P17CRF0114

288

1  VERN PIERSON, DISTRICT ATTORNEY
   COUNTY OF EL DORADO, STATE OF CALIFORNIA
2  BY:    EDWIN KIM
          Deputy District Attorney
3         State Bar #290482
4  515 Main Street
   Placerville, CA 95667
5  Telephone: (530) 621-6415

6

7

8  **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **IN AND FOR THE COUNTY OF EL DORADO**

10 THE PEOPLE OF THE STATE OF CALIFORNIA,          Case No.: P17CRF0114

11                                     Plaintiff,   **OPPOSITION TO DEFENDANT'S**
12                                                  **MOTION TO DISQUALIFY**
              vs.
13                                                 Date: 8/7/2017
14 TODD C. ROBBEN,                                 Dept: 21
                                                   Time: 9:00 a.m.
15

16                                     Defendant(s)

17

18              **MEMORANDUM OF POINTS AND AUTHORITIES**

19                          **ARGUMENT**

20 **I. CALIFORNIA PENAL CODE SECTION 1424 DETAILS THE PROCEDURAL AND**

21 **SUBSTANTIVE REQUIREMENTS TO DISQUALIFY THE DISTRICT ATTORNEY**

22 **AND THE OFFICE**

23        Defendant's Motion to Disqualify Prosecuting appears to be citing to Section 128 of the

24 California Code of Civil Procedure as the procedural and substantive statute by which Deputy

25 District Attorneys (and the office) may be disqualified. The motion cites to *People v. Superior*

26 *Court of Contra Costa County* and *People v. Municipal Court for Santa Monica Judicial Dist.*,

27 which discuss the appropriateness and standards by which a defendant may disqualify a

28 prosecutor. These cases predate the 1980 adoption of California Penal Code section 1424

1

1  (hereafter "Section 1424"), which was created and passed in response to substantial increases of

2  unnecessary prosecutorial recusals. (California Penal Code section 1424, *People v. Merritt*

3  (1993) 19 Cal.App.4th 1573, 1578).

4       Section 1424 details the procedural and substantive requirements for a motion to

5  disqualify prosecutors. (*Haraguchi v. Superior Court* (2008) 43 Cal. 4th 706, 711). Therefore

6  any discussions of Section 128 of the California Code of Civil Procedure and cases that predate

7  Section 1424, while historically interesting, are irrelevant for the purpose of this motion. It is

8  Section 1424 that controls.

9     **b. A Quick Overview of a Motion to Disqualify**

10       The defendant may make a motion to disqualify a prosecutor and the entire office under

11  Penal Code section 1424. The defendant must provide notice to the Attorney General and the

12  district attorney's office at least 10 days prior to the date of the hearing and must: state the legal

13  basis for the request for disqualification, the facts setting the grounds for disqualification, and

14  must include an affidavit made by witnesses competent to testify to the facts alleged. (Penal

15  Code section 1424, section (a), subsection (1)). Both the Attorney General's office and the

16  district attorney's office may file a motion in opposition, file affidavits, and/or appear at the

17  hearing. (*Id.*)

18       The trial court then determines whether, based on the motions and affidavits of all parties,

19  an evidentiary hearing on the matter must be heard. The defendant has the burden of a prima

20  facie showing that the prosecutor/office must be disqualified pursuant to 1424. (Penal Code

21  section 1424, section (a), subsection (1); *Spaccia v. Superior Court* (2012) 209 Cal. App. 4th 93,

22  108-111; *Packer v. Superior Court* (2014) 60 Cal. 4th 695, 710-711.) A prosecutor may be

23  disqualified if two elements are met: (1) whether a "reasonable possibility" of less than impartial

24  treatment exists AND (2) whether any such possibility is so great that it is more likely than not

25  the defendant will be treated unfairly during some portion of the criminal proceedings (*Packer v.*

26  *Superior Court* 60 Cal 4th at 709-710; *Haraguchi v. Superior Court* 43 Cal. 4th at 713). Thus the

27  defendant must place in his affidavit facts that, if credited, would fulfill both those elements. If

28  the defendant does not, the court must deny the motion.

2

1        If the defendant makes a prima facie showing, then an evidentiary hearing will be

2    ordered. The defendant bears the burden of showing a genuine conflict, a burden that is

3    especially heavy when the defendant is seeking to disqualify an entire office. (*Haraguchi v.*

4    *Superior Court, supra,* 43 Cal.4th at 709; *People v. Trinh* (2014) 59 Cal.4th 216, 229). The legal

5    test is the same; however, the standard is now by preponderance.

6        In this case, the defendant has not complied with the notice requirements of the statue nor

7    has the defendant made the prima facie showing required to even get to a hearing. The motion

8    should be denied.

9

10    **II. DEFENDANT FAILED TO NOTICE ALL PARTIES OF INTEREST WITHIN 10**

11    **DAYS OF THE HEARING**

12        The defendant must provide notice of the motion to disqualify a district attorney to both

13    the District Attorney's Office and the Attorney General's Office at least 10 court days before the

14    motion is set to be heard. (California Penal Code section 1424, section(a), subsection (1)). "The

15    district attorney or the Attorney General, or both, may file affidavits in opposition to the motion

16    and may appear at the hearing on the motion and may file with the court hearing the motion a

17    written opposition to the motion." (*Id.*) The standard for review of a Section 1424 appeal is for

18    abuse of discretion. (*Haraguchi v. Superior Court,* 43 Cal.4th. at 711.)

19        In this case, the People were not provided with the motion until August 4, 2017, the date

20    which the defendant made the motion. It is the People's belief that the defendant has not served

21    the Attorney General's office at all.  The court should deny the motion for this reason as notice to

22    both offices is required by statute, as evidenced by the usage of "shall".

23        This requirement makes sense as the Attorney General's office is a party of interest in a

24    motion to disqualify: they would have to prosecute the defendant's criminal violations if the

25    entire district attorney's office were disqualified. By not providing notice to the Attorney

26    General's Office, the defendant is depriving the office of its statutory right to file an affidavit in

27    opposition to the motion, file a written opposition, or appear for the hearing.

28

3

In re TODD ROBBEN  -  Petition for writ of habeas corpus                    519

1      The court should not grant a motion when a party of interest is unable to even respond

2  due to the defendant's own lack of compliance with a clear notice requirement. Nor should the

3  court grant any defense motion to continue the trial set on August 14, 2017. The motion to

4  disqualify was filed with the court on July 27, 2017, though notice was not provided to the

5  district attorney's or the Attorney General's office. Had the defendant notified both the district

6  attorney's office and Attorney General's office in a timely manner, the motion could have

7  properly been addressed within 10 days of the filing prior to the set trial date.

8      This failure to provide proper notice is not good cause for the defense to request or be

9  granted a continuance to file this motion with proper notice.

10

11  **III. THE DEFENDANT HAS NOT MADE A PRIMA FACIE SHOWING THAT DALE**

12  **GOMES OR THE DISTRICT ATTORNEY'S OFFICE SHOULD BE DISQUALIFIED**

13      Notice  "*shall* contain a statement of the facts setting forth the grounds for the claimed

14  disqualification and the legal authorities relied upon by the moving party and *shall* be supported

15  by affidavits of witnesses who are competent to testify to the facts set forth in the affidavit

16  [emphasis added]." (*Id.*)

17      **a. The Declarant Has Not Shown that He is Competent to Testify to the Factual**

18  **Statements Made in his Declaration**

19      In his declaration, counsel for the defendant ,Russell W. Miller Jr., states that he is the

20  attorney representing the defendant in this criminal action. He does not state any other basis for

21  which he would have knowledge of the factual declarations he made in his declaration. He does,

22  however, number his factual declarations from #1-#12.

23      Only factual declarations #5, #7, and  #12 would logically arise from being defense

24  counsel. Declarations #1-#4, it is presumed, concern civil actions and would not necessarily be

25  within the defense counsel's knowledge. They would be in his client's, but the declarant would

26  not be able to testify as to the facts based solely on statements made to him by the defendant as

27  they would be hearsay without an exception and not something the declarant would have

28

4

305

1 | knowledge of. It is worth noting that the declarations of the civil suits have no case numbers,

2 | dates, statements as to whether the parties have been served, or what the basis of the action is.

3 |     Likewise, it is unclear how defense counsel would be competent to testify to declaration

4 | #6 and declarations #8 -#11.

5 |     The People are not disparaging the trustworthiness or professionalism of defense counsel;

6 | however Section 1424 explicitly states that the declaration shall be made by witnesses who are

7 | competent to testify as to the information within. Mere declaration upon belief is not sufficient to

8 | be competent to testify. As the court may only consider motions and affidavits/declarations in

9 | determining whether a hearing should be set, the declarant had to include the basis for his

10 | competency to be able to testify to the information in the declaration. His failure to do so should

11 | be considered a lack of ability to testify to the information declared to. If the declarant is not

12 | competent to testify to the information within the declaration, the information cannot be utilized

13 | to consider whether an evidentiary hearing is warranted or not.

14 |     Thus, the People would request only factual declarations #5, #7, and #12 be considered

15 | by the court.

16 |     **b. Even If the Entire Declaration Were Considered In Favor towards the Defendant,**

17 | **He Still Has Not Made a Prima Facie Showing that the Prosecutor Should Be Disqualified**

18 | **or Made Any Statements Rebutting the Presumption that the Prosecutor Will Act Properly**

19 |     Prior to having an evidentiary hearing, the court must look at the motions and affidavits

20 | and determine if the defendant has met a burden of a prima facie showing that the prosecutor

21 | should be disqualified. The elements are: (1) whether a "reasonable possibility" of less than

22 | impartial treatment exists AND (2) whether any such possibility is so great that it is more likely

23 | than not the defendant will be treated unfairly during some portion of the criminal proceedings .

24 | (Penal Code section 1424, section (a), subsection (1); *Spaccia v. Superior Court* (2012) 209 Cal.

25 | App. 4th 93, 108-111; *Packer v. Superior Court* (2014) 60 Cal. 4th 695, 710-711.)

26 |     The defendant "bear[s] the burden of demonstrating a genuine conflict; in the absence of

27 | any such conflict, a trial court should not interfere with the People's prerogative to select who is

28 |

5

306

1  to represent them." (*Id.* at 709.) The defendant must prevail on both parts of the two part test in

2  order for there to be a disqualification.

3  "The recusal of an entire prosecutorial office is a serious step, imposing a substantial

4  burden on the People, and the Legislature and the courts may reasonably insist upon a showing

5  that such a step is necessary to assure a fair trial." (*People v. Hamilton* (1989) 48 Cal.3d 1142,

6  1156.) Moreover, "[d]isqualification of an entire prosecutorial office from a case is disfavored by

7  the courts, absent a substantial reason related to the proper administration of justice." (*People v.*

8  *Hernandez* (1991) 235 Cal.App.3d 674, 679-680.) The showing of a conflict of interest

9  necessary to justify so drastic a remedy must be especially persuasive. (*Id.* at p. 678; see also

10  *People v. Petrisca* (2006) 138 Cal.App.4th 189, 195.)

11  In considering a motion for disqualification, the court must presume the district attorney

12  properly and conscientiously will discharge his or her duties and has performed official duty

13  properly. (*Melcher v. Superior Court (2017) 10 Cal. App. 5th 160,* 170)

14  Even if one were to consider all of the defendant's factual allegations contained in the

15  declaration in favor of the defendant, the defendant has not alleged facts to show that it is more

16  likely than not that the defendant will be treated unfairly.

17  The defendant has not stated that Mr. Dale Gomes, Mr. Vern Pierson, or the District

18  Attorney's Office was aware of the legal action the defendant has filed against them (a

19  requirement that is glaring considering he has already left a party of interest unnoticed in this

20  very motion). He has not provided any information as to the action, whether it is of such nature

21  that a prosecutor would be more likely than not to treat him unfairly or if the suit is related to this

22  prosecution or not. Quite frankly, it is not an unheard of for defendants to complain or sue

23  district attorney's offices in an attempt to avoid criminal penalties or for other benefits.

24  Similarly, the defendant has not provided through motion or affidavit, information that

25  Mr. Pierson, Mr. Gomes, or the District Attorney's Office was aware of any of the facts that the

26  defendant is claiming, that those facts would make any of the prosecutors more likely than not to

27  treat him unfairly, or even how there would be a reasonable possibility that a less than impartial

28

6

1    treatment would occur to the defendant. Being sued or complained about by defendants is not a
2    new thing, after all.

3        Notably, the defendant has not provided any affidavit or argument in his motion that
4    would rebut the presumption that a prosecutor will properly and conscientiously discharge his or
5    her duties properly. While the case discussing the presumption is analyzing the hearing, the
6    presumption logically exists in the analysis of whether or not the hearing should occur as, the
7    defendant must provide facts that would prevail at a hearing if found true. And in order to prevail
8    at the hearing, the presumption must be rebutted by facts, which must be shown in the motion or
9    declarations. No facts or arguments in motions or declaration provided by defense rebuts this
10   presumption.

### IV. CONCLUSION

12   As the defendant has not made a prima facie showing that, pursuant to Section 1424, the
13   prosecutor should be disqualified, no evidentiary hearing is required. The motion should be
14   dismissed. If a hearing is granted, the People will make further oral arguments on this matter.

16   Dated: August 7, 2017                          Respectfully submitted,

17
18                                                  VERN PIERSON
                                                    District Attorney

19                                         By:  _____
20                                                  EDWIN KIM,
                                                    Deputy District Attorney

21
22
23
24
25
26
27
28

                                        7

                                                                            308

In re TODD ROBBEN  -  Petition for writ of habeas corpus                    523

141

1              MONDAY, AUGUST 7, 2017   3CT 638

2                   MORNING SESSION

3                      ---oOo---

4          The matter of the People of the State of California

5     versus Todd Christian Robben, Defendant, No. P17CRF0114,

6     came on regularly, before the Honorable Steve White, Judge

7     of the Superior Court of California, County of El Dorado,

8     State of California, sitting in Department 21 thereof.

9          The People were represented by Dale Gomes,

10    Deputy District Attorney for the County of El Dorado, State

11    of California.

12         The Defendant Todd Christian Robben was personally

13    present and represented by Russell Miller, Attorney at Law,

14    Sacramento, California, as his counsel.

15         The following proceedings were then had, to-wit:

16         THE BAILIFF:  Come to order.  Department 21 is now in

17    session.

18         THE COURT:  Good morning.

19         MR. GOMES:  Good morning, your Honor.

20         MR. MILLER:  Good morning, your Honor.

21         THE COURT:  In the matter of the People of the State

22    of California versus Todd Robben.  P17CRF0114.

23         Record will show that Mr. Robben is present in custody

24    with his counsel, Mr. Miller.

25         Mr. Gomes is here on behalf of the El Dorado County

26    District Attorney's Office and the People of the State of

27    California.

28         This is before the Court for continuing proceedings in

SACRAMENTO OFFICAL COURT REPORTERS       141

In re TODD ROBBEN  -  Petition for writ of habeas corpus          524

142

1    the defendant's motion to disqualify the District Attorney

2    in this matter.

3        The District Attorney was not properly served, nor was

4    the Attorney General served, as should have been the case,

5    and as Section 1424 of the Penal Code requires.

6        The People have filed opposition to the defendant's

7    motion to disqualify, which the Court has read, as well as

8    the defendant's papers, as were read previously.

9        The defense has also filed a notion -- a motion for

10   continuance in this case.

11       Let me go directly to you, Mr. Gomes.

12       MR. GOMES:  Yes, sir.

13       THE COURT:  Do you want to just submit on your papers?

14       MR. GOMES:  I'd like to supplement a little bit the

15   factual record that we made on Friday.

16       I do think that we're -- and -- and I'll -- I'll alert

17   the Court that I assigned a task of filing this written

18   response and drafting this written response to an attorney

19   in my office because I was in another trial and unavailable

20   to deal with it this weekend.

21       He took a couple of approaches I necessarily wouldn't

22   have taken.  I think it can be addressed on the merits.

23       I think that the defense's affidavit and declaration

24   in support of their motion is deficient and does not in any

25   way support a ruling that the El Dorado County District

26   Attorney's Office should be or needs to be recused from this

27   matter.

28       I think an important factual foundation that needs to

143

1    be supplemented from Friday or stated for the record for the

2    Court to understand, and this motion in full context that --

3    the procedural history that has taken place prior to the

4    defendant ever being prosecuted in El Dorado County.

5         And that procedural history began in Carson City,

6    Nevada where the defendant was charged with serious felony

7    violations for threatening to murder a Superior Court judge

8    in the State of Nevada.

9         The Carson City District Attorney's Office charged him

10   with conspiracy to commit murder on a public official.

11        Then began what historically was his first of many

12   attempts to disqualify public officials from his personal

13   prosecutions, that being the Carson City District Attorney's

14   Office.

15        What happened in Carson City then, and I -- I'm

16   telling the Court this because I think it is important

17   factual context, is that ultimately the Carson City District

18   Attorney's Office was, in fact, recused from that

19   prosecution which set in place the defendant's pattern now

20   of attempting to recuse both judges and District Attorney's

21   whenever he finds himself in the cross-hairs of the criminal

22   justice system.

23        His case was transferred to Douglas County Nevada

24   where inexplicably the District Attorney in the Douglas

25   County Nevada did not have the wherewithal or the courage or

26   the confidence to prosecute that case, and the defendant's

27   case was dismissed in State of the Nevada.

28        That has now lead to the defendant's subsequent

144

1   behavior of taking direct, but hopefully ineffectual, steps

2   in most instances or in at least in this instance. 'Cuz in

3   most instances, it has worked to recuse both judges and

4   prosecutors from his cases with the ultimate hope that he

5   finds himself before a judge or a prosector who won't have

6   the courage or the wherewithal to prosecute.

7       I think that's very important context because you have

8   to see the defendant's history and the fact that the

9   defendant succeeded in this -- in this course of conduct in

10  the past.

11      So he now has engaged in a set of behaviors and

12  actions designed to first recuse judges, which somehow

13  worked in El Dorado County, as the Court has seen, and now

14  prosecutors, in order to hopefully, eventually find that one

15  just right prosecutor or a judge who is going to dismiss the

16  cases against him.

17      So all of the defendant's vague and factually

18  specific -- sorry for the inartfulness of my language,

19  allegations in his motion, are manufactured by this

20  defendant for this purpose.

21      His apparent lawsuit, that I still haven't seen or

22  been served with in Federal District Court suing me, doesn't

23  say what his cause of action is against me. He doesn't

24  certify what I have done to warrant any type of -- of civil

25  remedy on his behavior -- or anything like that.

26      The same is true of the El Dorado County District

27  Attorney's Office. He says he sued us. I believe him, but

28  he doesn't say for what or why or why he believes there is

145

1  any merits behind the lawsuits that he has filed.  And the

2  same is true with the District Attorney of El Dorado County.

3      Just simply filing a lawsuit is easy.  This defendant

4  has demonstrated that.  If it wasn't easy, he couldn't do

5  it.

6      But filing those lawsuits, that does not then render

7  me or my office incapable of dealing with him, like we deal

8  with hundreds and thousands of criminal defendants postured

9  just like him.  He's going to get what he's going to get

10 based upon what the State of California dictates and what

11 justice requires.

12     And he shouldn't be allowed to manufacture conflict of

13 interest with a judge, with a defense attorney or with a

14 prosecutor simply because he hopes if he does it enough

15 times and in enough ways, he'll ultimately get the judge or

16 the prosecutor that he prefers.

17     I'll submit on that, your Honor.

18     THE COURT:  All right.  Thank you, Mr. Gomes.

19     Mr. Miller.

20     MR. MILLER:  Yes, your Honor.

21     I did receive the People's opposition this morning

22 from Madam Clerk.  I haven't had an adequate opportunity to

23 review all of it.  I understand where it comes from and the

24 genesis of it.

25     However, when the prosecution wants to go back to what

26 happened in Carson City, actually, it's the same thing as I

27 believe has happened here.

28     And that is the civil action was filed prior to the

146

1    criminal action.  It was filed precedent and therefore, it

2    wasn't a method to obstruct justice.  But nevertheless,

3    that's not my argument today.

4         I have read and in respect to some of the points that

5    the People brought up, I have filed a motion to continue.  I

6    made mention of that and gave notice to Mr. Gomes.  I would

7    have that filed and heard today.

8         I'm simply going to ask for a little bit more time to,

9    if you will, file and research the issues.

10        One of the points though they do bring on it, and that

11   is that I need to have had an affidavit.  Well, my

12   declaration is one.  I believe the Court can -- can consider

13   that.

14        Secondly, a great deal of the information that came

15   from my client -- and my client's not required to file an

16   affidavit if represented by counsel I do not believe under

17   the Civil Code.

18        And I was able to go on to the federal site and look

19   up cases, and I have a case number in Federal Court.

20   Federal Court uses a different system then we do in state

21   court.  You file a civil action and it must go through a

22   review process.

23        And that finishes the review process, then the Federal

24   Court notifies the plaintiff that they can go forward or

25   not.  And I believe that no notification from the Federal

26   Court has been issued or received by my client.

27        Therefore, some of the -- whether Mr. Gomes has been

28   served or whether Mr. Pierson's been served or not is not

In re TODD ROBBEN - Petition for writ of habeas corpus        529

147

1    of -- within the power or the authority of myself or my

2    client.

3        So I'm asking for the motion on -- under 1424, to be

4    continued.  I'm asking for the continuance for a variety of

5    reasons.

6        And now the research and response to the 1424, I would

7    also ask for adequate opportunity to serve the Attorney

8    General.

9        I read it as may.  They read it as must.  I think it's

10   just in the best interest of everyone if the Attorney

11   General is served, and so I wish to do that.

12       So I'd like --

13       THE COURT:  I thought it said shall.  I -- I may be

14   wrong.

15       MR. MILLER:  Well, I remember -- I read the part that

16   said that the District Attorney or the Attorney General may

17   file a response.

18       THE COURT:  Right.  But that has to do with the

19   response.

20       MR. MILLER:  Right.

21       So I would like an opportunity to serve the Attorney

22   General so this motion can be properly heard.

23       THE COURT:  Shall be served on the District Attorney

24   and the Attorney General --

25       MR. MILLER:  Okay.

26       THE COURT:  -- at least 10 days -- 10 court days

27   before the motion is heard.

28       Mr. Gomes.

148

1      MR. GOMES:  I don't have any problem with the Court

2  considering any of the information contained in the

3  affidavit attached to the defense's motion.

4      I'll withdraw a portion of what -- my

5  office's response.  Object to the Court considering those

6  things.

7      I'm fine with the Court considering those things as

8  represented, presentation made by Mr. Robben's attorney in

9  good faith, with a good faith belief in the truth and

10  veracity thereof.

11      THE COURT:  So you're waiving any procedural

12  objections?

13      MR. GOMES:  As to that information, yes.

14      THE COURT:  Mr. Miller.

15      MR. MILLER:  Yes, your Honor.

16      Well, I think I appreciate that, and I'm still

17  requesting an opportunity to file a response.

18      I would say for the record my client has prepared what

19  he believes would be supplement points and authorities and

20  argument to my motion.

21      And I will take that, and I will consider what he has

22  suggested for me.  And I will include all the parts that I

23  believe are relevant and proper to include in the motion.

24      Therefore, I'd ask to -- for the Court to continue the

25  matter as contained in my motion for continuance, and ask to

26  set a new date at least 10 days out.

27      And I'll have the Attorney General served today.

28      THE DEFENDANT:  Actually, I would like to file this

SACRAMENTO OFFICAL COURT REPORTERS        148

In re TODD ROBBEN  -  Petition for writ of habeas corpus        531

149

1      because I --

2            THE COURT:  No, you're not the lawyer.  Remain silent.

3            All right.  Is the matter submitted?

4            MR. GOMES:  Yes, your Honor.

5            THE COURT:  Mr. Miller, is the matter submitted?

6            MR. MILLER:  Yes, your Honor.

7            THE COURT:  The defendant's motion to disqualify the

8      District Attorney of El Dorado County is denied.

9            The Court has considered all of the pleadings in this

10     matter, the history of this case, and the representations of

11     the defendant in respect to advancing this motion.  I am

12     satisfied without any reservation that the motion is without

13     merit.

14           This is, in the Court's view, almost entirely a

15     contrivance of the defendant for purposes of preempting his

16     own prosecution.  He has a pattern of doing this.

17           And it will be unavailing in this instance.  The mere

18     fact that there is concurrent civil litigation is

19     insufficient to justify actual qualification.

20           Additionally, an intense personal involvement in the

21     litigation, constituting bias, must be shown.

22           I cite in that regard, People versus Battin,

23     B-a-t-t-i-n, 1978, 77 Cal. App. 3rd, 635.

24           I'm also very mindful of the perspectives set forth in

25     People versus Hamilton, 1989, 48 Cal. Third, 1142 at 1156,

26     which observes in pertinent part that the recusal of an

27     entire prosecutorial office is a serious step imposing a

28     substantial burden on the People, and the Legislature, and

150

1    the courts may reasonably insist upon a showing that such a

2    step is necessary to assure a fair trial.

3         I have no reservation at all, and no question about

4    Mr. Gomes's ability to be objective and to conduct the

5    executive function in connection with this case without any

6    embroilment or overreach.

7         The motion is denied on its merits.

8         Let's go to the defense motion for a continuance.

9         This is a motion, over the defendant's own objection

10   it appears.

11        And the purpose offered by Mr. Miller in his

12   declaration has to do with investigating further accusations

13   and allegations that may relate to the People presenting

14   1101 (B) evidence.

15        Let me, Mr. Miller, let you expand on that a little

16   bit and then we'll go to Mr. Gomes.

17        MR. MILLER:  Thank you, your Honor.

18        I received during the course of discovery information

19   in a video that comes out of the Nevada state prosecution.

20        And in an informal meet and confer with Mr. Gomes, I

21   understand it's his intention to use that potentially as

22   1101 (B) type evidence.

23        I need to have that investigated more thoroughly.  I

24   need to find the people that are involved in that.

25        As well, we have spent, this Court notes, a great deal

26   of time with pretrial motions.  And they've been lengthy and

27   arduous.  I need more time to spend with my client and with

28   my investigator to actually ferret out the merits of the

151

1    case itself.

2        So to represent Mr. Robben competently, I'm requesting

3    a continuance to the week of September 18th.

4        THE COURT:  Mr. Gomes.

5        MR. GOMES:  The evidence that Mr. Miller references

6    I -- I believe is -- is an audio recording not a video.  But

7    it is critical, and it is evidence I intend to offer.

8        It's an audio recording of the defendant having a

9    conversation while in jail in the Carson City, Nevada County

10   Jail wherein he offers to pay somebody $5,000 to kill Judge

11   Tatro, who is a judge presiding over some of his cases in

12   that state.

13       It was the impetus, if you will, of the prosecution

14   that we referenced earlier that took place in Carson City,

15   Nevada, that very recording.  So it is powerful and

16   compelling evidence that I think Mr. Miller needs to deal

17   with thoroughly and completely before he can call ready for

18   trial.

19       THE COURT:  How long have you had this audio?

20       MR. GOMES:  How long have I had it?

21       THE COURT:  How long has -- when did you grant

22   discovery in Nevada?

23       MR. GOMES:  It would have been -- come over his

24   original discovery, maybe -- I don't know.

25       MR. MILLER:  Three weeks.  I probably haven't had it a

26   month I would have to say.

27       The original discovery did come over.  However, then    .

28   the People did send me a supplemental disc suggesting there

152

1   was more to it and that's when I received this.

2       And I -- I watched the video so it's there --

3       MR. GOMES:  Video.

4       MR. MILLER:  -- young man in a yellow suit.  I -- I

5   watched 'em.

6       THE COURT:  Let me inquire, Mr. Miller and Mr. Gomes,

7   in this regard.

8       I know Mr. Gomes, you're in trial in El Dorado County

9   right now?

10      MR. GOMES:  I am.

11      THE COURT:  I'm about ready to begin a trial, go about

12  two or three weeks counsel; is that right?

13      Record reflect I'm addressing counsel in the other

14  matter.

15      What I'd be inclined to do Mr. Miller, is to trail

16  this case to begin immediately after the trial I just

17  referenced concludes, which would probably be two or three

18  weeks out.

19      MR. MILLER:  I would make every effort to be prepared

20  by then.

21      I would also inform the Court that I spent from first

22  time that I took -- was assigned to Mr. Robben's case, I was

23  also assigned to a trial in Department 40.  A young man,

24  People versus Franks.  That took quite a long time and quite

25  an amount of my attention so I wasn't able to give

26  Mr. Robben a great deal of attention at the outset.  So I'm

27  preparing.

28      But if the three weeks -- I'll make every effort.

153

1          THE COURT:  Let's do that.

2          And my other concern is I'm going to be gone for two

3     weeks at the end of September --

4          MR. MILLER:  Okay.

5          THE COURT:  -- so --

6          MR. MILLER:  Thank you.

7          THE COURT:  -- and first two weeks of October I think.

8          MR. GOMES:  And just so the Court is apprised of -- of

9     my schedule, I start evidence tomorrow.

10         The Court told our jury that we would be in session

11    through -- I can't see your calendar over there, but I want

12    to say the 24th of August.

13         Is the top month over there August over there?

14         THE COURT:  Yes.

15         MR. GOMES:  All right.  So three weeks.  Our weeks are

16    Tuesday, Wednesday, Thursday, our court weeks for trial.

17         And so I don't think we'll necessarily go all the way

18    to the 24th.  That's what we told our jury.

19         I -- I think we probably have a good chance to have it

20    to the jury by the 22nd or 23rd.  So just to give the Court

21    context of where I am.

22         THE COURT:  Why don't we do this, Mr. Miller?  Why

23    don't we all of us just stay in touch as these cases

24    progress, Mr. Gomes's case, anything that you have on your

25    calendar, Mr. Miller, and then the case that I'm in trial

26    on, and anticipate that sometime in late August we may be

27    able to begin this trial.

28         MR. MILLER:  May I request that the Court find good

154

1  cause to grant my continuance request in part to the 28th?

2  That's three weeks out.

3      Does that make -- it's late August I think is what the

4  Court was suggesting.

5      MR. GOMES:  It would give me some flexibility 'cuz

6  that will give us a 10-day trail window.  And at this point

7  I don't know what my witness situation is going to be like

8  going out to the 21st.

9      THE COURT:  All right.  I find good cause based on

10  this record and the earlier representations made by both

11  counsel to grant over the defendant's objection the motion

12  for a continuance to the 28th of August at which time we'll

13  begin trial.

14      MR. MILLER:  Thank you, your Honor.

15      THE COURT:  Thank you, all.

16      THE DEFENDANT:  I'd like to file my motion.  This is

17  just another preemptory (sic) challenge on you, Mr. White.

18      THE COURT:  We're all over.  Out.

19      THE DEFENDANT:  This is verify -- to verify a

20  preemptory challenge on you.

21      THE COURT:  Deputy, take him out.

22      THE DEFENDANT:  Can I get this filed, please?

23      THE COURT:  No.

24      The record should reflect counsel referred to in the

25  other case are Mr. White and Mr. Satchel.

26      THE DEFENDANT:  Steve, are you refusing to file this?

27  Is that what's going on?

28      THE COURT:  Remove the defendant now.

In re TODD ROBBEN - Petition for writ of habeas corpus          537

155

1     THE BAILIFF:  All right.  Stand up.

2     THE DEFENDANT:  Steve, there is -- you're being sued.

3  You don't have any jurisdiction in this case.  Filing a

4  complaint against you.  You will not be hearing this case,

5  Mr. White.

6

7                    (proceedings concluded)

8                        --o0o--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petitioner must not be denied due-process under the U.S 6th & 14th amendment because of his incompetent appointed lawyer as shown above.

In the above embedded exhibit it should be noted this Petitioner was thrown out of the courtroom by the bias/corrupt judge White when he attempted to file another CCP 170.6 motion. A trial judge may not deny the parties their procedural due process rights by preempting their ability to present their case. _In Inquiry Concerning Broadman_ (1999) 48 Cal.4th CJP Supp. 67.

The trial court Judge Steve White denied the motion to disqualify the D.A. office claiming it was without merit and claimed it was for purposes of preempting the prosecution and that this Petitioner has a pattern of doing this. J**udge White stated "Additionally, an intense personal involvement in the litigation, constituting bias, must be shown. I cite in that regard, _People v Battin_ (1978) 77 Cal. App. 3rd 635."**

The _Battin_ case actually states "Turning first to defendant's reference to the suit brought by the employees' association, we note that the Supreme Court in Greer stated, **"[n]or should a prosecutor try a defendant with whom he is embroiled in civil litigation."** (Id. at p. 261, relying on _Sinclair v. State_, 278 Md. 243 [363 A.2d 468], and _Ganger v. Peyton_, 379 F.2d 709.)"

In _People v. Superior Court (Greer)_, 561 P. 2d 1164 – Cal. Supreme Court 1977:

**"A fair and impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7, subd. (a);** see, e.g., Tumey v. Ohio (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243]; In re Murchison (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623]; People v. Lyons (1956) 47 Cal.2d 311, 319 [303 P.2d 329]; In re Winchester (1960) 53 Cal.2d 528, 531 [2 Cal. Rptr. 296, 348 P.2d 904].)

**It is the obligation of the prosecutor, as well as of the court, to respect this mandate.** (Berger v. United States (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629]; People v. Lyons, supra, 47 Cal.2d at p. 318; People v. Talle (1952) 111 Cal. App.2d 650, 676-678 [245 P.2d 633].) Nor is the role of the prosecutor in this regard simply a specialized version of the duty of any attorney not to overstep the bounds of permissible advocacy. The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. (People v. Municipal Court (Pellegrino) (1972) supra, 27 Cal. App.3d 193, 203-204; Ganger v. Peyton (4th Cir.1967) supra, 379 F.2d 709, 713.) In all his activities, his duties are conditioned by the fact that he "is the representative not of any ordinary

party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, **therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.** As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." (Berger v. United States (1935) supra, 295 U.S. 78, 88 [79 L.Ed. 1314, 1321]; People v. Lyons (1956) supra, 47 Cal.2d at p. 318; see also Ganger v. Peyton, supra, 379 F.2d at p. 713; United States v. Cox (5th Cir.1965) 342 F.2d 167, 193 (Wisdom, J., concurring).)

**Thus not only is a judicial requirement of prosecutorial impartiality reconcilable with executive discretion in criminal cases, it is precisely because the prosecutor enjoys such broad discretion that the public he serves and those he accuses may justifiably demand that he perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof.**[8] One of the reasons often cited for the institution of public prosecutions is that "Americans believed that an officer in a position of public trust could make decisions more impartially than could the victims of crimes or other private complainants," persons who often brought prosecutions under the older English system of criminal justice. (Miller, Prosecution (Am. Bar Foundation 1969) p. 295; see Meister v. People (1875) 31 Mich. 99, 103; 3 Holdsworth, A History of English Law (7th ed. 1956) p. 621, 9 Holdsworth, id., pp. 241, 244-245.) **This advantage of public prosecution is lost if those exercising the discretionary duties of the district attorney are subject to conflicting personal interests which might tend to compromise their impartiality.** In short, the prosecuting attorney "`is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts, or by an interested individual. ...'" (Italics added.) (United States v. Cox, supra, 342 F.2d at p. 192.)

Undeniably there are circumstances in which the participation of a district attorney in a criminal trial as prosecutor would be improper. For example, it would not be proper for such an attorney to prosecute a client or former client, without that client's consent, for a crime "relating to a matter in reference to which [the attorney] has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rules of Prof. Conduct, rule 4-101; Young v. State (Fla.App. 1965) 177 So.2d 345; State v. Leigh (1955) 178 Kan. 549 [289 P.2d 774]; People v. Gerold (1914) 265 Ill. 448, 471-480 [107 N.E. 165, 175-178]; see Corbin v. Broadman (1967) 6 Ariz. App. 436 [433 P.2d 289]; Annot., 31 A.L.R.3d 953, 963-978.) **Nor should a prosecutor try a defendant with whom he is embroiled in civil litigation.** (Ganger v. Peyton (4th Cir.1967) 379 F.2d 709; Sinclair v. State (1976) 278 Md. 243 [363 A.2d 468].)

There were at least two civil suites against Vern Pierson and one with Vern Pierson named as a co-defendant.  Other "victims" in case # P17CRF0114 are named as defendants in various civil rights lawsuits filed by this Petitioner including Judge John Tatro from Carson City

Nevada, D.A. Vern Pierson, D.D.A. Dale Gomes, South Lake Tahoe Police Officer Shannon Laney, the City of South Lake Tahoe City Attorney Thomas Watson, El Dorado County, El Dorado County Superior Court Clerks (along with Third District Court of Appeal Clerks & Clerks from the California Supreme Court – for failing to file Petitioner's legal filings) Judges Steven Bailey, Suzanne Kingsbury and James Wagoner are also named.

In *People v. Vasquez, 137 P. 3d 199 - Cal: Supreme Court 2006:*

" *Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 249-250, 100 S.Ct. 1610, 64 L.Ed.2d 182, the federal high court observed that **"[p]rosecutors are also public officials; they too must serve the public interest" and that consequently "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors** 381*381 **into the prosecutorial decision and in some contexts raise serious constitutional questions." In the case before it, however, the court found it unnecessary to say "with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function, for here the influence alleged to impose bias [an institutional financial interest in increased enforcement] is exceptionally remote."** (*Id.* at p. 250, 100 S.Ct. 1610 fn. omitted.)

The Supreme Court gave the problem of an interested prosecutor further attention in *Young v. U.S. ex rel. Vuitton et Fils S.A.* (1987) 481 U.S. 787, 790, 107 S.Ct. 2124, 95 L.Ed.2d 740 (*Vuitton*), holding improper a district court's appointment, to prosecute a criminal contempt for violations of an injunction against trademark infringement, of attorneys who also represented the trademark holder. Special criminal contempt prosecutors, like United States Attorneys, should have an undivided duty to see justice done. (*Id.* at pp. 803-804, 107 S.Ct. 2124.) The interest of the government in "dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary" is not necessarily congruent with the private client's interest in the monetary benefits of enforcing the court's injunction. (*Id.* at p. 805, 107 S.Ct. 2124.) Because of the attorneys' ethical duties to their private client, moreover, the conflict was unusually manifest: while ordinarily "we can only speculate whether other interests are likely to influence an enforcement officer," where a prosecutor also represents an interested private party, "the ethics of the legal profession *require* that an interest other than the Government's be taken into account." (*Id.* at p. 807, 107 S.Ct. 2124.)

**State Court Filings:**

1. ROBBEN vs CITY OF So. Lake Tahoe et al      SC20160053
   WRIT OF MANDATE – UNLIMITED 3/29/2016

2. ROBBEN VS EL DORADO CO. SUPERIOR COURT  PCL20160174
   WRIT OF MANDATE       5/13/2016

3. ROBBEN vs EDC DISTRICT ATTORNEY et al SC20130106
   WRIT OF MANDATE - UNLIMITED      6/20/2013

**Federal Court Filings:**

**Robben** v. El Dorado County et al 2:2016cv02698 | US District Court ...
https://dockets.justia.com/docket/california/caedce/2.../306115
Nov 14, 2016 ... Plaintiff: **Todd Robben**. Defendant: El Dorado County, Vern Pierson, Dale Gomes , Mike Pizzuti and El Dorado County District Attorney.

**Robben** v. El Dorado County et al 2:2016cv02695 | US District Court ...
https://dockets.justia.com/docket/california/caedce/2.../306085
Nov 14, 2016 ... Plaintiff: **Todd Robben**. Defendant: El Dorado County, Lynn Cavin, Mary Ann Swenney and John D&#039;Agostini. Case Number: 2: ...

**Robben** v. City of South Lake Tahoe et al 2:2016cv02696 | US ...
https://dockets.justia.com/docket/california/caedce/2.../306093
Nov 14, 2016 ... Plaintiff: **Todd Robben**. Defendant: City of South Lake Tahoe, Shannon Laney, Cory Wilson, Chris Webber and Brian Uhler. Case Number: 2: ...

(PC) **Robben** v. Norling, No. 2:2016cv02699 - Document 31 (ED Cal ...
https://law.justia.com/cases/federal/district-courts/california/caedce/2.../31/
(PC) **Robben** v. Norling, No. 2:2016cv02699 - Document 31 (E.D. Cal. 2018) case opinion from the Eastern District of California US Federal District Court.

for **Robben** v. Carson City, Nevada et al
https://docs.justia.com/cases/federal/district-courts/nevada/nvdce/3.../102
Filing 102. ORDER that 95 Emergency Ex Parte Motion to Waive PACER Costs and Fees is GRANTED with the following provisions: (1) On or before February ...

**Todd Robben** v. California Supreme Court, et al 19-15213 | U.S. ...
https://dockets.justia.com/docket/circuit-courts/ca9/19-15213
Feb 6, 2019 ... Plaintiff / Appellant: **TODD ROBBEN**. Defendant / Appellee: FRANK A. MCGUIRE, ANDREA K. WALLIN, CALIFORNIA SUPREME COURT, ...

**Todd Robben** v. John D'Agostini 19-16014 | U.S. Court of Appeals ...
https://dockets.justia.com/docket/circuit-courts/ca9/19-16014
May 14, 2019 ... Other case filed on May 14, 2019 in the U.S. Court of Appeals, Ninth Circuit.

**Robben** v. Justin, et al 2:2013cv00238 | US District Court for the ...
https://dockets.justia.com/docket/california/caedce/2.../249905

Feb 6, 2013 **...** Plaintiff: **Todd Robben**. Defendant: Richard Justin, Dennis Justin, Jeff Robben and BailBonds Inc. (BBI) of Fallon, Nevada. Case Number: 2: ...

**Robben** v. El Dorado County et al 2:2016cv02697 | US District Court ...
https://dockets.justia.com/docket/california/caedce/2.../306096
Nov 14, 2016 **...** Plaintiff: **Todd Robben**. Defendant: El Dorado County, El Dorado County Sheriff, John D&#039;Agostini, Rosen, Sapien and Joe Britton.





# Man protests alleged corruption outside courthouse, DA's Office

By Cole Mayer

https://www.mtdemocrat.com/news/man-protests-corruption-outside-courthouse-das-office/

A protest concerning possible corruption in El Dorado County was the result of what the organizer described as a kidnapping and assault by bounty hunters illegally trying to detain him.

Todd "Ty" Robben, a former IT worker for the Nevada Department of Taxation, was arrested after he supposedly harassed a member of the Nevada Department of Transportation. He said, however, that he was simply trying to serve her a subpoena.

"She was complaining she had not been personally served," he said, so he went in person to do it. As a result, a district attorney in Carson City, Nev. charged him with assault and disturbing the peace.

The roles were seemingly reversed when bounty hunters showed up at Robben's door, kicking it in, tasing him three times and slashing his tires, he claimed.

"They were 'bounty hunters' but they used a warrant and acted as agents of the court," something they are not allowed to do, he said. He claims they did not follow Penal Code 847.5 — an out-of-state bounty hunter must file an affidavit with a judge of the county and receive permission to collect the bounty.



El Dorado County District Attorney Vern Pierson agreed wrongdoing had occurred, he said, and one of the bounty hunters, Doug Lewis, had charges brought against him.



"However, Dennis Justin of the Justin Bros. Bail Bonds Co. from Carson City was the main 'perp' who conspired and acted directly with Mr. Lewis," Robben claims. "Mr. Justin used a battering ram with Mr. Lewis and took down my front door, entered my home, tased me three times and chased me into the forest." He also alleges that Justin admitted to him of slashing Robben's tires.



But, because Lewis took a plea deal for only two charges, and because Justin, who Robben described as the "ringleader," was never charged, Robben suspects corruption. In order to gain public attention, he protested outside of the Main Street courthouse and the DA's Office. With oversized "crime scene" tape and signs, Robben and a few others protested.

"This protest was planned … in response to the DA shutting me down and not taking my phone calls or returning e-mails," Robben said. "I felt the only thing I could do is talk with my signs and a PA system to express my issues with DA Pierson outside his office and ask the press to get him to answer. This is what

we have to do to get our elected officials to do their job and talk to us. It's sad and I know he could do better. I want to support him, but this is outrageous." He later said, "People are sick of corruption."

Pierson, however, said that everything about the case was handled properly.

"I strongly support and would defend Mr. Robben's exercise of his First Amendment rights," Pierson said of the protest. "Having said that, I'm aware of the circumstances surrounding the Reno bounty hunters contacting South Lake Tahoe Police Department and ultimately taking him into custody on behalf of Nevada law enforcement. His case was handled properly by our office."

After Robben's attorney spoke with the District Attorney's Office, Robben revealed that the reason they are not prosecuted is that they "can't prove Dennis Justin was here." He said that Justin never denied it, however, and again pointed out that Justin allegedly admitted to slashing Robben's tires. If there is no prosecution, Robben said, he will call for the resignations of Pierson and deputy district attorney Bill Clark, who is handling the case.



Richard Justin, brother of Dennis Justin, said that they would be unable to comment on the matter due to pending lawsuits. But, "the truth will come out," he said.

The protest, which began around 12:30 p.m., lasted until 6 p.m. Capt. Mike Scott of the Placerville Police Department noted that, at least through 5 p.m., there were no calls of public disturbance related to the protest.

Robben is suing Justin in Sacramento Federal Court; Justin is countersuing for defamation.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF EL DORADO**

THE PEOPLE OF THE
    STATE OF CALIFORNIA,

      Plaintiff,

      -vs-

DOUGLAS LEWIS,

      Defendant(s).

_____/

DKT:

DA #:  12-12-006486

AGENCY REPORT #:
SLPD 1210-1438

DEPARTMENT 3

**CRIMINAL COMPLAINT**

The District Attorney of El Dorado County, based upon information and belief, hereby alleges:

COUNT 1

On or about the 18th day of October, 2012, in the County of El Dorado, the crime of unlawful arrest by bondsperson of fugitive from another state, in **PENAL CODE SECTION 847.5**, a Misdemeanor, was committed by DOUGLAS LEWIS, who, as the agent of a bondsperson or other person who was bail for Todd Robbens in the State of Nevada, did take said Todd Robbens into custody as a fugitive from the State of Nevada without complying with the requirement of Penal Code Section 847.5 that he first request and secure a warrant of arrest from a magistrate of the State of California.

COUNT  2

On or about the 18th day of October, 2012, in the County of El Dorado, the crime of AGGRAVATED TRESPASS, in violation of **PENAL CODE SECTION 602.5(b)**, a Misdemeanor, was committed by  DOUGLAS LEWIS, did, without consent of the owner, owner's agent and the person in lawful possession thereof, unlawfully enter and remain in a noncommercial dwelling house, apartment and other residential place while a resident and another authorized person was present.

COUNT  3

On or about the 18th day of October, 2012, in the County of El Dorado, the crime of VANDALISM OF A DWELLING , in violation of PENAL CODE SECTION 603, a

Misdemeanor, was committed by DOUGLAS LEWIS, who was a person, other than a peace officer engaged in the performance of his/her duties as such, who did unlawfully, forcibly, and without the consent of the owner, representative of the owner, lessee, and representative of the lessee thereof, enter a dwelling house, cabin, and other building located at 610 Mary Street, Carson, NV, occupied and constructed for occupation by humans, and damage, injure, and destroy property of value in, around, and appertaining to such dwelling house, cabin, and other building.

### COUNT 4

On or about the 18th day of October, 2012, in the County of El Dorado, the crime of BATTERY, in violation of **PENAL CODE SECTION 242**, a Misdemeanor, was committed by DOUGLAS LEWIS, who did willfully and unlawfully use force and violence upon the person of Todd Robben.

### COUNT 5

On or about the 18th day of October, 2012, in the County of El Dorado, the crime of DAMAGE OR TAKE PART OF VEHICLE, in violation of **VEHICLE CODE SECTION 10852,** a Misdemeanor, was committed by DOUGLAS LEWIS, who did unlawfully injure and tamper with a vehicle and the contents therof and did break and remove a part of the vehicle without the consent of the owner, to wit, Todd Robben.

**Based upon information and belief**, the undersigned certifies in his/her official capacity and under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on the date stated below at El Dorado County, California.

VERN R. PIERSON
District Attorney

By:    _____

HANS M. UTHE
Assistant District Attorney

Dated: March 7, 2013
tr

**LOCATION OF CRIME**: CITY OF SOUTH LAKE TAHOE

**Pursuant to Penal Code §1054.5(b)**, the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code §1054.3 and pursuant to the provisions of Penal Code §1054.7.

**WARNING: Penal Code Section 1054.2 makes it a Misdemeanor Criminal Offense** for an **attorney** receiving discovery to disclose certain confidential information regarding victims and witnesses to defendants and others. Attorneys should review this code section carefully before sharing reports received in discovery with anyone.



## El Dorado DA Vern Pierson gets protested with "World's Largest CRIME SCENE Tape"

## Crime Scene at District Attorney's Office – Widespread Public Support

In El Dorado County

ONLINE NEWSPAPER POWERED BY
**PLACERVILLE NEWSWIRE**

| HOME | SUBSCRIBE | ADVERTISE | SUBMIT NEWS/EVENTS | FREE CLASSIFIEDS | LOCAL EVENTS | ABOUT | MEDIA KIT | NEWS 44 | CHANNEL 2 |

Original story: http://www.inedc.com/1-4705

Broad Support, and lack of objectors, indicate a widespread belief among the public that there is some kind of corruption in the administration of fair and equal justice in El Dorado County.

Placerville Newswire | May 21 2013

184

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

000667

247

In re TODD ROBBEN  -  Petition for writ of habeas corpus          549

*Placeville Newswire Note:* I observed the protest for about one hour and during that time about 20% of the passing vehicles yelled out expressing support for the protesters. One patron having lunch with his wife at the Pizzeria across the street expressed support for the protest but with this caveat, "Good Luck, they do what they want in El Dorado County." **It was clear that there was widespread public perception that there was some form of corruption in the administration of justice in El Dorado County.**

*From the protest organizer:*
In a nutshell, DA Pierson charged one of 5 perpetrators who kick in my door, tased me 3 times, slashed my tires and tried to kidnap me (arrest me) on behalf of the Carson City Nevada Court. They were "bounty hunters" but they used a warrant and acted as agents of the court. Only Sheriff or Police serve warrants. They acted under the color of law and as mercenaries by using the said warrant. DA Pierson agrees to most of this and charged Doug Lewis the hired "bounty Hunter". However, Dennis Justin of the Justin Bros Bail Bonds Co. from Carson City was the main "perp" who conspired and acted directly with Mr. Lewis. Mr. Justin used a battering ram with Mr. Lewis and took down my front door, entered my home, tased me 3 times and chased me into the forest! Mr. Justin admitted to slashing my car tires too.

If you get a chance, google California Penal code 847.5 (they violated this).
DA Pierson did in fact charge Mr. Lewis, and I am good with that. However, they offer him a plea deal to 2 charges. I always felt Dennis Justin should be charged since he was the "ring leader". But since Mr. Justin acted in collusion with the Carson City court, the court is implicated in a RICO (Racketeering Influenced Corrupt Organization).

I am suing Dennis Justin in Sacrament Federal Court in a multi million dollar lawsuit. Dennis Justin has counter sued me for defamation for calling him a fraud and because I protested is Justin Bros Bail Bonds offices in Carson City and Reno. ...It's really a SLAPP lawsuit and I feel it is a public concern that he operating using a bounty hunter with a "revoked" business license and they violated 5 criminal count. Justin Bros also undermines Nevada law and buys bonds using California bonds at 10% premium rather that Nevada's 15% premium, that would be fraud and a public concern.

DA Pierson must charge Dennis Justin and deal with the RICO by forwarding to the FBI since it would be federal or deal with that himself.

We we're running behind schedule today since my friends came from Reno and hit road construction... sorry for that. The wind was an issue, but it mellowed out and we

185

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

**000668**

248

In re TODD ROBBEN - Petition for writ of habeas corpus          550

1  did get the worlds second largest crime scene banner hung. The big banner was too
2  much of an issue with the wind.

3  This protest was planned last Friday in response to the DA shutting me down and not
4  taking my phone calls or returning emails. I felt the only thing I could do is talk my
5  signs and a PA system to express my issues with DA Pierson outside his office and
   ask the press to get him to answer.  This is what we have to do to get our elected
6  officials to do their job and talk to us. It's sad and I know he could do better. I want to
7  support him, but this is outrageous.

8  I also found out he acts as the IT Director for El Dorado Co! This brings him another
9  $100K income ( I am told not vetted). I was told how busy he is and the DA is short
   staffed, over worked, etc. I feel another person should be the IT director, and let the
10 DA focus on the matters of the DA office. I am outraged by the story about the court
11 staff taking paycuts and protesting, yet others are literally getting rich on the
   Taxpayer's dime and others are suffering.

12
13 -Todd "Ty" Robben



186

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

**Inside: A Mt. News look at the Johnny Poland case. Page 16**



# TAHOE MOUNTAIN NEWS

Serving Lake Tahoe's South Shore Since 1994          Vol. 19, No. 8 • February 2013



Ty Robben stands in front of one of his giant banners protesting the SLT Police Department.          Photo by Taylor Flynn

# Going for broke

Local resident Ty Robben is taking on the authorities in a bizarre case involving Nevada officials, bounty hunters, and the South Lake Tahoe Police Department. To try to get to the bottom of it all, the *Mountain News* has filed a California Public Records Act request.

See the story at http://www.mountainnews.net/201302/#/1



Local resident Ty Robben holds a protest against the SLT Police Department on Jan. 28.

Photo by Taylor Flynn

# Man on a mission



**By Heather Gould**

Ty Robben says he'd rather be leading a normal life as a regular guy than leading protests against local law enforcement, but says seeking justice is his first priority.

The local man is objecting to police conduct following an October 18 incident at his Sierra Tract home in which bounty hunters from Nevada attempted to capture him – illegally, he says – on a contempt of court warrant out of Carson City. Out on bail for charges related to subpoena service gone awry, he had failed to show up for a required check-in, due to illness, which he says was caused by poisoned food in the Carson City jail. But Robben, 43, says sending in the forces was unnecessary. Robben told the *Mountain News* authorities knew his exact location, because he was wearing a GPS device at the time and he also says he had checked in with the court by phone.



TAHOE'S COFFEE

*Celebrating 21 Years as the Sierra Nevada's Premier Coffee Roaster*

Robben says he wasn't going anywhere anyway. "I'm not a flight risk It's basically the parking ticket of criminal charges," nothing serious enough to cause him to abscond, he said.

The "nucleus" of his woes, he says, began in 2007, when, he says, he and another employee of the Nevada Department of Taxation brought to the attention of their superiors operational failures in the department's computer system – like, it couldn't add right – failures to properly audit the mining industry, the transmission of pornography by some employees and the use of racial slurs by one of the managers. In return, says Robben, he was fired. He subsequently filed suit against the state and his case is currently on appeal.

As his court case initially proceeded, he asserted that the Nevada Attorney General handled it improperly and illegally, leading him to protest Nevada state government in Carson City with giant "crime scene" tape and other signs in front of state offices.

Robben deployed similar signs

Continued on Page 34

## MOUNTAIN NEWS COVER STORY

### "Ty Robben case"
Continued from Page 32

along Al Tahoe Boulevard on January 28 as part of his protest against the South Lake Tahoe Police Department.

Continuing the saga, last August Robben attempted to serve a Nevada state official with a subpoena for a friend who had fought to get his state pilot's job back after being fired in what the friend claimed was retaliation for exposing wrongdoing and unsafe practices at the Department of Transportation. The woman Robben was serving said she felt threatened by Robben and later received a restraining order against him, though Robben denies he was menacing in any way and said that she actually ran over his toe. Charges were filed against Robben, including assault, which were later dropped except one. He took a deal on a disorderly conduct charge to avoid jail time. If Robben complies with all court conditions for a year, that charge will be dismissed also.

While incarcerated in the Carson City jail, says Robben, he was put on suicide watch, a ploy to imprison him in solitary confinement, he says, had his food poisoned and was burdened with excessive bail. He denies involvement in the recent shooting of Judge John Tatro's home, the same judge who issued the contempt of court warrant and set Robben's bail. He does contend that Tatro and the majority of officials involved in his case are all connected in one way or another as former

classmates, colleagues, friends, parents and such. "It's an incestuous little situation down there." No wonder, he says, Nevada received a D- for corruptibility from the Center for Public Integrity.

While he might seem a little out there and somewhat of a loose cannon, Robben wrote in an email to the *Mountain News*, " Am I a threat? Maybe, to . . . political careers . . . but I have no immediate or long range plans to go postal with AR15's and AK47's. Instead I am using my first amendment rights to free speech." Robben said his protests are a way to "let off steam" and also provide solace for others who may be facing a similar situation.

He provided a letter from the El Dorado County Mental Health Department stating that in his current mindset, he does not qualify for mental health services, which essentially means he is sane, he says. "Do I sound 'off' or crazy? I know this story could make people think that because the facts are outrageous, but it is all true and that is why I am taking it to the press and

complaining about this."

His complaint against the South Lake Tahoe Police Department is two -fold.

1. The South Lake Tahoe Police Department is dragging its feet in completing a report on the October incident and forwarding it to the District Attorney for possible criminal prosecution and has failed to provide him with a copy of the report and;

2. the police department allowed the bounty hunters to proceed in violation of the provisions of California state law and though standing by when the incident occurred to "keep the peace," he says, failed to intervene as the bounty hunters committed "burglary, assault, batter(y) with deadly weapons, kidnapping, vandalism, trespassing, giving false info to a peace officer, stalking and harassment, etc.," Robben wrote in an email to the *Mountain News*. He said he was "tased" three times and had to flee into a nearby meadow to escape. "It was like Rambo," he said."Fortunately nothing happened. It could have been a lot more serious."

Robben says he did not seek medical attention because he was in "shock" and worried about being accosted again by the bounty hunters, or maybe even being taken in by police, if he ventured out. He has retained an attorney and has filed a civil suit against the bounty hunters. He also aired his complaints before the city council at its January 22 meeting and a special February 11 meeting.

In an email from police Lieutenant Brian Williams shared by Robben with the *Mountain News*, Williams said Robben may not have fully understood police procedures and laws regarding the investigation and preparation of reports and the amount of time it takes. He concedes the department fumbled by not clearly directing Robben about how to file a report at first.

> "Do I sound 'off' or crazy? I know this story could make people think that because the facts are outrageous, but it is all true and that is why I am taking it to the press and complaining about this."
>
> – Ty Robben
> Police protester



**LAKE TAHOE'S TOWING EXPERTS**

**DAMAGE-FREE TOWING • LAW ENFORCEMENT APPROVED**

happens with all kinds of cases . . . While you might have the impression that the SLTPD is a decently sized agency–our investigative resources are quite limited (only 3 detectives). This means that many cases are investigated by patrol officers and supervisors in-between their normal day-to-day work (patrolling, responding to calls for service, etc.)."

Neither the police department nor the El Dorado County District Attorney's office would provide a copy of the report to the *Mountain News* and neither offered a legal reason for the report's withholding. When originally asked, police spokeswoman Lieutenant Dave Stevenson said the matter was in the hands of the district attorney and directed all questions and requests for comment to that office. Assistant District Attorney Bill Clark told the *Mountain News* that the police department was in fact the legal custodian of the report and so decisions regarding its disclosure would have to come from the police, acknowledging the situation was a "catch-22."

The *Mountain News* filed a California Public Records Act request to obtain the report. "This is public information and the public has a right to know. This kind of game playing between two agencies is unacceptable," said *Mountain News* pub-

lisher Taylor Flynn. "Just put it out there so the public can assess what's going on."

Clark did say the matter was a low priority, given other, more pressing matters, such as pretrial hearings in the case of the alleged killer of Richard Swanson, a teenage gas station attendant slain in Tahoe in more than 30 years ago. He said the report was a lot tamer than Robben's rendition of events and outlined only misdemeanor crimes by the bounty hunters.

Clark told the *Mountain News* the report was brief, only a few pages long. Uhler said the report was 108 pages in his email.

Meanwhile, Robben has launched two websites – nevadastatepersonnel-watch.wordpress.com/ and sltpdwatch.wordpress.com – devoted to his case. He has also become involved in the Lawless America movement, dedicated to exposing judicial and government corruption throughout the nation.

These days Robben says he is self employed in the IT field and also sells the "crime scene" banners he uses in his protests. Many of his sales come from communities such as Berkeley, which he calls the "epicenter for selling protest signs."

# TAHOE TRIBUNE COVERS THE SOUTH LAKE TAHOE POLICE PROTEST



# Police protest draws handful of supporters
By <u>Adam Jensen</u>



*Reno resident Mike Weston, left, and South Lake Tahoe resident Ty Robben string up oversized crime scene tape during a  police protest along Al Tahoe Boulevard Monday afternoon. Adam Jensen / Tahoe Daily Tribune*



## Ty Robben was pushing the envelope regarding the city's sign ordinances.

A man who is upset about South Lake Tahoe Police Department's handling of an incident involving bounty hunters at a Sierra Tract home protested alleged police corruption Monday. Todd "Ty" Robben unfurled oversized crime-scene tape and posted numerous signs on Al Tahoe Boulevard Monday afternoon alleging malfeasance by police.

Robben is angered by the department's response to an October incident in which he says **Nevada bounty hunters illegally entered his Pinter Avenue house** to serve a misdemeanor contempt of court warrant out of Nevada without the required documentation from California.

He said he was **shocked with a Taser** during the incident, **but escaped** what he considers an attempted **kidnapping by the bounty hunters**. **"What I'm saying**

**is justice delayed is justice denied,"** Robben said at the start of Monday's demonstration. **"They're not giving me a straight answer on the delay."**

South Lake Tahoe Police Chief Brian Uhler was surprised by the protest, saying he has been in contact with Robben regarding the status of the investigation as recently as Friday.



The department has made "steady progress" on the investigation of the bounty hunters' behavior, Uhler said. He questioned the need for urgency on the incident because it does not present an ongoing threat to public safety.

The police chief also questioned the use of language on some of the protest signs that could be offensive to some and said **Robben was pushing the envelope regarding the city's sign ordinances.** He said the department supports people's constitutional rights to free speech and didn't want to make a big deal about the possible infractions.

Police have submitted information on the October incident to the El Dorado County District Attorney's Office, Uhler said. Whether or not criminal charges will arise form the incident is unknown.

The District Attorney's Office sent the investigation of the incident back to police in December for further information gathering last month. Assistant District Attorney Hans Uthe said on Tuesday afternoon that documentation of the incident was re-submitted to prosecutors about 10 a.m. Monday.

Despite the signs alleging corruption, Robben said he doesn't feel that most police are corrupt, but said that it is up to them to prove they are not. He said he hoped the protest would bring exposure to people with similar complaints.

"This is what we can do as citizens," Robben said, describing himself as a patriot."

Three people were at the protest when it started around noon. Several people stopped by to inquire about the reasons for the signs.

Fliers advertising the protest included a picture of recently arrested South Lake Tahoe police officer Johnny Poland. Robben said the protest was planned prior to Poland's arrest.

This is not the first time Robben has used protests to draw attention to alleged corruption by government officials.

Robben organized similar protests in front of the Nevada Attorney General's Office in April, alleging the Carson City Court Clerk's Office manipulated transcripts and improperly allowed the Nevada Attorney General's Office to file court documents late in his fight to be reinstated to a job with the Nevada Department of Taxation, according to an article in the Nevada Appeal.

In September 2009 Robben filed a lawsuit alleging he was the victim of discrimination and was demoted after bringing complaints to managers.

Robben was arrested in Carson City in August on misdemeanor counts of assault and breach of peace for an incident in which he says he was legally attempting to serve a subpoena on Nevada Department of Transportation Director Susan Martinovich earlier in the month, according to the article.

Robben said that Martinovich ran over his toe with a car while he was attempting to serve the subpoena, the Appeal reported. Martinovich has said she felt threatened during the incident and was later granted a restraining order against Robben.

Prosecutors said Robben pleaded no contest to a disorderly conduct charge to settle the case in November, according to a subsequent Nevada Appeal article.

**Note: The "disorderly conduct charge" charge is delayed and Ty Robben has not been convicted of that trumped up charge.**

> — The Associated Press contributed to this story.



## Lake Tahoe News covers Justin Brothers Bail Bonds / Doug Lewis criminal charges

### Carson City bounty hunter faces charges in S. Tahoe

On: March 13, 2013,  By: admin, In: News,  3 Comments

Five misdemeanor charges have been filed against a Carson City bounty hunter in regards to his actions in South Lake Tahoe. Douglas Lewis with Justin Brothers Bail Bonds has been charged with unlawful arrest, aggravated trespass, vandalism, battery and damaging a vehicle. The incident occurred in October at the South Lake Tahoe home of Ty Robben. Robben wanted felony charges filed against the suspect. He said the bounty hunters broke down his door and used a Taser on him.



Doug Lewis Nevada Bounty Hunter with Justin Brothers Bail Bonds

180

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

000663

243

In re TODD ROBBEN  -  Petition for writ of habeas corpus                561

Robben has since filed a civil suit against the Carson City firm and has protested the Justin Brothers with the large crime scene tape. "Protesting will continue against the Justin Bros for the duration" Robben said. It was the delay in action that led Robben in January to protest near the South Lake Tahoe Police Department.

Doug Lewis starred in a TV show called Bounty Hunter watch it here:http://youtu.be/dckPsFvYrdc?t=7m48s

Doug Lewis is also doing business on a permanently revoked Nevada business license according to the Nevada Secretary of State website http://nvsos.gov/SOSEntitySearch/corpsearch.aspx?st=c&ss=nevada%20bail%20enforcement



## Charges filed in police protest case against Justin Brothers Bail Bonds 'Bounty Hunter' Doug Lewis

**The** El Dorado District Attorney's Office has filed charges against a bail bondsman for an October incident that spurred a protest against the South Lake Tahoe Police Department.

On Thursday, Assistant District Attorney Hans Uthe filed five misdemeanor counts against bail bondsmen Douglas Lewis for an October incident in the Sierra Tract neighborhood in which bounty hunters allegedly entered the home of Todd "Ty" Robben in an attempt to bring him into custody on a Nevada warrant.

181

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

000664

244

The counts against Lewis include unlawful arrest, aggravated trespass, vandalism, battery and damaging a vehicle, according to court documents.

A man who answered the phone at Justin Brothers Bail Bonds Tuesday morning declined to say how Lewis could be reached. The man said there is no comment on the charges before hanging up. During the October incident, bondsmen from the company entered the Pinter Avenue home of Robben and shocked him with a Taser in an attempt to take him into custody, according to Robben' s account of the incident. Robben contends the bondsmen did not have a legal warrant for the search. The pace of the investigation into the incident led Robben to organize a protest against the police department along Al Tahoe Boulevard in January

source: http://www.tahoedailytribune.com/southshore/5522111-113/incident-robben-bail-bondsmen

COMMENTS:



Ty Robben · Top Commenter ·
I want to say thank you to the South Lake Tahoe Police and El Dorado County District Attorney for getting this done. Please see more at https://nevadastatepersonnelwatch.wordpress.com/.
Reply · Like · Follow Post · 3 seconds ago

182

VERIFIED PETITION FOR WRIT OF MANDATE, EX PARTE MOTION TO STAY

000665

245



# Protesters target Justin Brothers Bail Bonds

https://thisisreno.com/2013/03/opinion-protesters-target-justin-brothers-bail-bonds/

The Justin Brothers Bail Bonds company was the target of a protest held March 26, 2013 with protesters unfurling the "World's Largest CRIME SCENE tape" and other large signs like "Justin Brothers FRAUD" and "End the Rampant CORRUPTION."



What's all the commotion about? Protester Ty Robben said he was the victim of illegal activity by the Justin Bros (Dennis and Richard Justin) along with their "bounty hunter" Doug Lewis from Reno and Carson City. Robben said the Justin Bros are the subjects of a multi-million dollar lawsuit, five criminal charges (assault, battery with taser gun, violation of 847.5, etc.) and complaints with the Nevada Secretary of State for alleged failure to have a valid business license and the Nevada Division of Insurance for alleged fraudulent business activity related to the bail bond and bounty hunter (also called bail recovery) industry in Nevada.

Robben said he was originally involved in a legal situation for serving a court subpoena for the previous state pilot, Jim Richardson, to the former Nevada Department of Transportation Director Susan Martinovich. Robben was on bail for what he said was an trumped up misdemeanor charge of assault which he said was later dismissed. While on bail, and although not a "fugitive," Robben said he was wanted by the Justin Bros for an alleged violation of his pre-trial conditions.

Robben said the Justin Bros claim they had a warrant from the Carson City Justice Court signed by Judge John Tatro. The problem, Robben said, was that bail bondsmen and bounty hunters are not deputized peace officers, and they crossed into South Lake Tahoe in the State of California where Mr. Robben lives.

Robben said the bounty hunters kicked in his front door and tasered him 3 times. Robben said he was able to outrun the bounty hunters in the thick woods around his Tahoe home. He said the bounty hunters then slashed his car tires.

"These idiots acted above the law by acting under the color of law" said Robben, pointing out that bounty hunters like Dog the Bounty Hunter (who has a new series coming out April 2013 on CMT) are basically citizens and not deputized law enforcement. Bounty hunters do not serve warrants — police or the Sheriff typically perform that duty, Robben said.

Robben, who is represented by Sacrament attorney Julius Engel, said he has filed a multi-million dollar civil lawsuit against the Justin Bros in Sacramento Federal Court as case ROBBEN v. JUSTIN et al., Case No.: 2:13-cv-00238-MCE-DAD.



**SO. LAKE TAHOE NEEDS TO IMPLEMENT A CITIZEN REVIEW BOARD FOR SO. TAHOE POLICE INTERNAL AFFAIRS COMPLAINTS.**

Posted on *February 23, 2016* by *agent provocateur* under *South Lake Tahoe Police Corruption*



Greetings So. Lake Tahoe City Council:

I am requesting an "agenda item" to be placed on the next city council meeting to address citizen complaints against the police. The city needs to implement a Citizen review board for So. Tahoe police internal affairs complaints. Complaints against SLTPD officers known as "internal affairs" complaints appear to be covered-up by the corrupt SLTPD.

Many cities in California have implemented citizen review boards and South Lake Tahoe is a major tourist destination. The locals also deserve accountability. My experience is that the SLTPD covers-up citizen complaints against their personnel.

**This cover-up and white-washing must stop and there must be accountability and transparency in the SLTPD especially with the false arrests, police shootings, excessive force and neglect of SLTPD officers to follow State laws and withholding police reports from crime victims.**

See https://nacole.org/wp-content/uploads/184430.pdf
*"In many communities in the United States, residents participate to some degree in overseeing their local law enforcement agencies. The degree varies. The most active citizen oversight boards investigate allegations of police misconduct and recommend actions to the chief or sheriff. Other citizen boards review the findings of internal police investigations and recommend that the chief or sheriff approve or reject the findings. In still others, an auditor investigates the process by which the police or sheriff's department accept or investigate complaints and reports to the department and the public on the thoroughness and fairness of the process.*

*Citizen oversight systems, originally designed to temper police discretion in the 1950s, have steadily grown in number through the 1990s. But determining the proper role has a troubled history. This publication is intended to help citizens, law enforcement officers and executives, union leaders, and public interest groups understand the advantages and disadvantages of various oversight systems and*

*components. In describing the operation of nine very different approaches to citizen oversight, the authors do not extol or disparage citizen oversight but rather try to help jurisdictions interested in creating a new or enhancing an existing oversight system by: Describing the types of citizen oversight.*

*Presenting programmatic information from various jurisdictions with existing citizen oversight systems. • Examining the social and monetary benefits and costs of different systems. The report also addresses staffing; examines ways to resolve potential conflicts between oversight bodies and police; and explores monitoring, evaluation, and funding concerns. No one system works best for everyone. Communities must take responsibility for fashioning a system that fits their local situation and unique needs. Ultimately, the author notes, the talent, fairness, dedication, and flexibility of the key participants are more important to the procedure's success than is the system's structure."*

Thank You,
-Ty Robben


The above news articles are only a portion of press that has covered this Petitioner on the narrow issues concerning the South Lake Tahoe police and El Dorado D.A. in what was a cover-up of neglect by the police for their part in allowing a home invasion and attempted interstate kidnapping occur under their watch when the Justin Brothers bail bondsmen and their bounty hunters failed to obtain a legal warrant pursuant to penal code 847.5 which states

**"If a person has been admitted to bail in another state, escapes bail, and is present in this State, the bail bondsman or other person who is bail for such fugitive, may file with a magistrate in the county where the fugitive is present an affidavit stating the name and whereabouts of the fugitive, the offense with which the alleged fugitive was charged or of which he was convicted, the time and place of same, and the particulars in which the fugitive has violated the terms of his bail, and may request the issuance of a warrant for arrest of the fugitive, and the issuance, after hearing, of an order authorizing the affiant to return the fugitive to the jurisdiction from which he escaped bail.** The magistrate may require such

additional evidence under oath as he deems necessary to decide the issue. If he concludes that there is probable cause for believing that the person alleged to be a fugitive is such, he may issue a warrant for his arrest. The magistrate shall notify the district attorney of such action and shall direct him to investigate the case and determine the facts of the matter. When the fugitive is brought before him pursuant to the warrant, the magistrate shall set a time and place for hearing, and shall advise the fugitive of his right to counsel and to produce evidence at the hearing. He may admit the fugitive to bail pending the hearing. The district attorney shall appear at the hearing. If, after hearing, the magistrate is satisfied from the evidence that the person is a fugitive he may issue an order authorizing affiant to return the fugitive to the jurisdiction from which he escaped bail.

A bondsman or other person who is bail for a fugitive admitted to bail in another state who takes the fugitive into custody, except pursuant to an order issued under this section, is guilty of a misdemeanor."

This Petitioner was not absconding from bail or a fugitive in that case. And it should be noted that this Petitioner prevailed on his appeals and other court cases related to the false criminal charges from Carson City, Nevada.  These false charges and convictions in El Dorado County are clearly a series of retaliatory prosecution for this Petitioner's continued exercise of his constitutional rights including 1st amendment free speech (protests, websites, exposing corruption, and use of political hyperbole, rhetoric, satire and stating the facts in a profile public forum) as well as 1st amendment (grievances & right to petition) access to the courts to sue the wrongdoers. …and use commercial liens to obtain payments against the individuals, cities, counties and states.

The conflict-of-interest can be observed in the recent news articles and private websites of El Dorado D.A. Vern Pierson and his former Deputy D.A Dale Gomes who is now apparently a criminal defense lawyer in Placerville, CA. It's clear that D.A. Vern Pierson and Dale Gomes had a personal vendetta to attack and discredit this political enemy by claims of "fake news" being spread on this Petitioner's popular websites including the now decommissioned http://NevadaStatePersonnelWATCH.wordpress.com which had over a million views and thousands of daily "hits/views"… The website was taken down during the Petitioner's time in jail/prison and no reason has been provided from Wordpress.com as to any cause of action or alleged "violations of use". http://JudgeTatroScandals.worpress.com was also taken down with no reason given.



http://web.archive.org/web/20160219020659/https://nevadastatepersonnelwatch.wordpress.com/

The other websites http://NeighborsAgainstCorruption.wordpress.com and http://SLTPDwatch.wordpress.com remain active since there is and never was any violations of use policy…

### Facebook Says Page Celebrating "Dead Cops" Doesn't Violate its Community Standards

**While it bans page critical of 'Drag Queen Story Hour'.**

Paul Joseph Watson | Infowars.com - June 11, 2020 74 Comments

https://www.infowars.com/facebook-says-page-celebrating-dead-cops-doesnt-violate-its-community-standards/

**Facebook has refused to remove a page celebrating "dead cops," saying that it does not violate their community standards.**

The page is titled The Only Good Cops Are Dead Cops and openly incites violence against police officers. However, when it was reported to Facebook moderators, they reviewed the page and said that although it may be "offensive," it doesn't violate any specific community standards.

Meanwhile, another Facebook page set up by concerned parents that was critical of 'Drag Queen Story Hour' was banned by the social media giant.

500 Mom Strong was removed for "transphobic language," including one post that merely stated, "Reminder: Women don't have to be polite to someone who is making them uncomfortable."

Also see: https://thewashingtonsentinel.com/facebook-insists-page-celebrating-dead-cops-doesnt-violate-facebook-rules/

# D.D.A. Dale Gomes was so proud of his rigged conviction he brags about it on his new "criminal defense" website



https://www.dalegomeslaw.com/case-results

The man who led anti-South Lake Tahoe Police, El Dorado County Sheriff, District Attorney and Judge campaigns will be spending the next seven years in prison after he was given the maximum sentence October 27, 2017 in Sacramento Superior Court.

Todd "Ty" Christian Robben had been found guilty by a jury September 25 on eight felony charges which involved threats and attempted threats targeted at a number of public officials including Superior Court Judges in El Dorado County, a South Lake Tahoe Police lieutenant, an investigator from the State Bar, the South Lake Tahoe City Attorney, and a local attorney who represented the defendant on a misdemeanor appeal.

All judges sitting on the El Dorado County bench recused themselves due to Robben's threats so the case was heard in Sacramento before a Sacramento Superior Court Judge on an assignment handed down by the California Supreme Court.

After learning of the verdict, **District Attorney Vern Pierson issued the following statement: "I am pleased that a jury has convicted Mr. Robben of these crimes. I hope this sends a strong statement that El Dorado County won't tolerate threats or intimidation against judges or other public officials."**

Through intimidation and spreading fake news smear tactics, Robben was also known to use size-exaggerated crime scene tape to surround Carson City government buildings, the El Dorado County complex on the corner of Johnson Boulevard and Al Tahoe Boulevard in South Lake Tahoe and also in Placerville. He also ran two websites that targeted law enforcement and government with veiled threats of violence. He was seen numerous times in local courts and had threatened to disrupt a Nevada Day Parade with his crime scene tape antics.



A fired Nevada Department of Taxation employee, Robben also had run-ins with a Carson City judge, a district attorney and a sheriff in Carson City.

In 2014, Robben was accused of solicitation to commit murder and intimidation against Carson City Judge John Tatro in which formal charges were filed but later dismissed by a presiding judge in Douglas County.

Former Carson City District Attorney Neil Rombardo, Assistant District Attorney Mark Krueger and Carson City Sheriff Ken Furlong were subjects of intimidation by Robben but charges were never filed.

Source: http://www.southtahoenow.com/story/10/28/2017/ty-robben-spend-next-seven-years-prison



# Man who threatened public officials in California and Nevada given maximum prison sentence

https://carsonnow.org/story/10/28/2017/man-who-threatened-public-officials-california-and-nevada-given-maximum-prison-sent

Submitted by **Jeff Munson** on Sat, 10/28/2017

The man who once threatened to disrupt the Nevada Day Parade and led anti-Carson City, South Lake Tahoe Police, El Dorado County Sheriff's Office, district attorney and judge campaigns will be spending the next seven years in prison after he was given the maximum sentence Friday in Sacramento Superior Court.

Todd "Ty" Christian Robben had been found guilty by a jury Sept. 25 on eight felony charges which involved threats and attempted threats targeted at a number of public officials including Superior Court Judges in El Dorado County, a South Lake Tahoe Police lieutenant, an investigator from the State Bar, the South Lake Tahoe City Attorney, and a local attorney who represented the defendant on a misdemeanor appeal.

All judges sitting on the El Dorado County bench recused themselves due to Robben's threats so the case was heard in Sacramento before a Sacramento Superior Court Judge on an assignment handed down by the California Supreme Court.

After learning of the verdict, District Attorney Vern Pierson issued the following statement: "I am pleased that a jury has convicted Mr. Robben of these crimes. I hope this sends a strong statement that El Dorado County won't tolerate threats or intimidation against judges or other public officials."

**Through intimidation and spreading <u>fake news</u> smear tactics, Robben was also known to use size-exaggerated crime scene tape to surround Carson City government buildings, the El Dorado County complex on the corner of Johnson Boulevard and Al Tahoe Boulevard in South Lake Tahoe and also in Placerville.**

In re TODD ROBBEN - Petition for writ of habeas corpus                573

He also ran two websites that targeted law enforcement and government with veiled threats of violence. He was seen numerous times in local courts and had threatened to disrupt a Nevada Day Parade with his crime scene tape antics.

A fired Nevada Department of Taxation employee, Robben also had run-ins with a Carson City judge, a district attorney and a sheriff in Carson City.

In 2014, Robben was accused of solicitation to commit murder and intimidation against Carson City Judge John Tatro in which formal charges were filed but later dismissed by a presiding judge in Douglas County.

Former Carson City District Attorney Neil Rombardo, Assistant District Attorney Mark Krueger and Carson City Sheriff Ken Furlong were subjects of intimidation by Robben but charges were never filed.

D.A. Vern Pierson's website(s) promote a story about this Petitioner that his department did not even prosecute. His story is outdated since this Petitioner prevailed in the case below on appeal.  IT does show that D.A. Vern Pierson has a vendetta against this Petitioner for exposing his corruption and the pedophiles in the El Dorado Co, Sacramento Cr. and Carson City judicial system. The news articles of Petitioner's victory on appeal are presented in these pleadings. It should be noted that the Director of NOT who evaded service went to high school with the Carson City Sheriff and Judge John Tatro.  Vern Pierson's blog https://vernpierson.weebly.com/ appears to have two posts – one on Ray Nutting and this one on this Petitioner.  Both are meant to defame Mr. Pierson's political enemies despite both Mr. Nutting and this Petitioner having prevailed on their cases.

## Jailed ex-Taxation worker convicted

http://vernpierson.blogspot.com/2014/03/courtesy-here-ty-robben-fired-state.html

and

https://vernpierson.weebly.com/

Courtesy nevadaappeal.com

HERE

Ty Robben, the fired state Taxation employee who has been waging a campaign against the state and Carson City's criminal justice system for more than a year, was convicted Friday of misdemeanor disorderly conduct.

The conviction results from what the judge ruled was his failure to meet conditions of his plea agreement in a case involving his alleged assault on then-Nevada Department of Transportation Director Susan Martinovich. He originally was charged with assault when he ran alongside her vehicle, banging on it and trying to pull open the door. He said he was trying to lawfully serve her with papers in a case involving another fired state employee.

Under the deal, the charge was reduced to disorderly conduct and will be dismissed after a year if Robben meets conditions including seeking counseling for anger management and other issues.

Judge John Tatro, Sheriff Ken Furlong and NDOR Director all were classmates at Carson High School:

# Where did all the Carson graduates go?

**Not far!** According to the Carson High School Alumni Directory last printed in 2006, many of Carson High grads are alive and well living right here in Carson City or in a nearby Northern Nevada community.

It has been a fascinating experience tracking down former CHS graduates, and I felt I had hit the jackpot when former CHS coach Ron McNutt dropped by the Chamber to give me a copy of the alumni directory providing me with a wealth of information on CHS graduates.

The CHS Alumni Directory goes as far back as 1953 detailing the whereabouts of the graduates, what colleges or universities they attended, who they married and where they are

now living. According to the white pages devoted to where the graduates now live, over 3,000 call Carson City home.

The second most popular place for CHS graduates to live is in Reno with Sparks a close second. While some have moved to Gardnerville and Minden, it's not as many as you may think since most have favored staying very close to home.

Surprisingly, not as many graduates as would have been expected have migrated to the Golden State. Seems many preferred their home state.

When you look at those who are always in the news in our city, note that most are graduates of CHS. This fact alone quantifies our informal study. Our soon to be ex-Senator

Mark Amodei, our mayor Bob Crowell, Judge John Tatro, Sheriff Kenny Furlong, Fire Chief Stacy Giomi, NDOT Director Susan Martinovich, Congressman Dean Heller and so many others are Carson alumni.

We found some very recognizable names among the 1953 graduates: Amodei (Shirley), Furlong (Timothy and Yvonne), Quillici (Gloria), Richards (Garth), Whittemore (Charles Allen). Classes remained small until what seemed like a population explosion in 1961 when subsequent classes continued to grow as Carson City grew. In 1953, our population was at 4,500 and by 1961 had grown to 7,846.

In the 100 years since the first documented class in 1906, CHS has graduated 17,750 between 1953-2006 and that figure should be close to 20,000 by now. As stated in the directory, "the accomplishments of this group are vast and widespread from local personalities to those known nationwide." CHS has graduated outstanding athletes, scientists, many doctors, military heroes, actors, musicians, politicians, great chefs and so many more of which we all can be proud.

Seems the climate is right for incubating success at CHS and this is great for our business community. ∎

According to the Carson District Attorney's office, he failed to meet the conditions he agreed to in the October 2012 deal.

Assistant District Attorney Mark Krueger said Robben was brought before Judge Nancy Oesterle on Dec. 13, convicted on the disorderly conduct charge and sentenced to 60 days in jail. He was given credit for some 50 days of time served, so that sentence expires in about a week.

But Robben remains in jail in lieu of $50,000 bail on charges he libeled and attempted to intimidate Justice of the Peace John Tatro, including what Tatro said he sees as threats to his wife and children.

He lost an attempt three weeks ago to reduce his bail and disqualify the District Attorney's Office from prosecuting the case. He is appealing that ruling to district court.

When he was charged in the case involving Martinovich, he was brought before Tatro. He was incensed by what he saw as unfair treatment by the judge and began a campaign to remove Tatro from office including a website that contains elements the sheriff's investigators ruled were illegal.

They charged him with felony stalking electronically and attempting to intimidate a public official and intimidating that official's family -- both felonies. He also was charged with intimidating a public official, a gross misdemeanor, and libel.

He is still in jail awaiting a preliminary hearing in that case.

http://vernpierson.wordpress.com/

Posted 9th March 2014 by Pesce



# Prosecutor drops charges against man accused of murder-for-hire plot

Submitted by admin on Fri, 04/11/2014 - 8:22am

https://carsonnow.org/story/04/11/2014/prosecutor-drops-charges-against-man-accused-murder-hire-plot

The Douglas County District Attorney dropped charges Thursday against a man whom Carson City prosecutors had said tried to hire a jail inmate to kill Justice of the Peace John Tatro.

Ty Robben, a former Nevada Taxation Department employee, was being held on the charge with a $50,000 bail. **Mark Jackson, the district attorney brought on as special prosecutor after Carson City's DA was removed from the case**, said he reviewed the evidence before him and made the decision.

In a statement Jackson said: **"Based on a full and complete review of all the evidence and the existing constitutional, statutory and case law, I filed a notice of dismissal today in the Carson Township Justice Court."**

**Last month Jackson dropped charges of stalking, libel and two counts of intimidation of Tatro and his family, saying there wasn't enough evidence that Robben was stalking him and his family**, and that Nevada's libel law was vague.



## Charges against Tahoe man dropped

News NEWS | April 11, 2014

Geoff Dornan
gdornan@nevadaappeal.com

https://www.tahoedailytribune.com/news/charges-against-tahoe-man-dropped/

**All charges against South Tahoe resident Ty Robben have now been dropped.**

Douglas County District Attorney Mark Jackson, the special prosecutor named to handle the cases, previously dismissed libel and harassment charges. He served notice Thursday that he was dropping the charge Robben tried to hire a hit man to kill Justice of the Peace John Tatro.

**Jackson was brought in after the Carson City DA's office was disqualified from handling the case.**

**"Based on a full and complete review of all the evidence and the existing constitutional, statutory and case law, I filed a notice of dismissal today in the Carson Township Justice Court," Jackson said in a statement.**

He said that means Robben's $50,000 bail has been lifted, and all pending charges against him have been dismissed.

"It is my understanding that Mr. Robben is in the process of being released from the Carson City Jail," Jackson said.

Robben stopped by the Tahoe Daily Tribune Friday and said he was hoping to restore his life and family. He thanked his attorneys for their work to get him released.

**"Thank you to Mark Jackson for standing up and supporting the U.S. Constitution," Robben said.**

**Two weeks ago, Jackson dismissed the other case against Robben, which accused him of libel and stalking and two counts of attempting to intimidate Tatro and his family.**

He did so stating that Nevada's libel law was "unconstitutionally vague." The stalking charge, he said, simply didn't have enough evidence to support it.

Robben has been battling the state and criminal justice system since he was terminated by the Taxation Department. He was angry with Tatro for his conviction on charges of disorderly conduct centered on his attempt to — allegedly — serve papers on behalf of a friend on then-NDOT Director Susan Martinovich.



# Charges dropped: DA protester out of prison

https://www.mtdemocrat.com/news/charges-dropped-da-protester-out-of-prison/

By Cole Mayer - Published on April 17, 2014

A man known for protesting the El Dorado County District Attorney's Office and charged with soliciting the murder of a judge in Nevada was released from prison and his charges dismissed.

South Lake Tahoe resident Ty Robben was released last week after Douglas County, Nev., District Attorney Mark Jackson dismissed the solicitation of murder charge, along with a charge of criminal libel — a charge that is not used in California.

Both the criminal libel and solicitation of murder charge concerned Judge John Tatro, Robben said. But, Robben told the Mountain Democrat he was exercising his First Amendment rights for the first charge, and he was not soliciting anything on the second charge. Rather, another prisoner — while Robben, known as "Top Ramen" while incarcerated on the libel charge — propositioned him with a $5,000 "roofing job," Robben said.

Jackson confirmed he dismissed the charges due to lack of evidence and unlikelihood of conviction. He also noted that the Carson City, Nev., DA's Office was originally on the case, but was taken off due to having been named in a federal lawsuit Robben filed against them.

Robben credits his faith with seeing him through his time in prison. "My faith in the Lord got me through the darkest period in my life and I pray that I can start to forgive these people for the unforgivable acts of government retaliation using the criminal justice system after I had filed a federal lawsuit in Reno two weeks before I was arrested in California," he said.



Ty Robben speaks at the Feb 11, 2013
South Lake Tahoe City Council Meeting
re: SLTPD corruption

1.1K views · Feb 16, 2013
YouTube › WATCHDOWG



Carson City 911 NV NDOT Dir. Susan
Martinovich HIT and RUN and Sheriff
COVER-UP

1.5K views · Aug 28, 2012
YouTube › WATCHDOWG

https://www.youtube.com/watch?v=two3wtVCvsM
https://www.youtube.com/watch?v=NsMMnwZpAC0

The above news articles are just a few that attempt to describe a conflicting narrative between various law enforcement agencies, courts/judges, District Attorneys, etc.  in two states (California and Nevada)… Before going too far afield and off topic, it must be said that this Petitioner has been wrongfully charged with crimes he did not commit and he



By Ed VogelLAS VEGAS REVIEW–JOURNALCAPITAL BUREAU
March 11, 2011 - 1:02 pm

Don't miss the big stories. Like us on Facebook.     Like 265K

CARSON CITY — State Taxation Director Dino DiCianno "retired" abruptly Friday, less than 24 hours after he told legislators that his staff for the past two years has not audited mining companies to determine if they are properly paying state taxes.

And Gov. Brian Sandoval ordered an audit of mining operators' books to ensure they are paying their required state net proceeds of minerals taxes.

is the victim of a smear campaign by several elected officials who attempt to cover-up their own misconduct. Petitioner wsa a whistle-blower at the Nevada Department of Taxation where hundreds of millions of dollars were embezzled by the Director and the state.  The Director, Dino DiCianno was fired.  The IT computer system that Petitioner worked on was also defective and cost the Taxpayers millions of dollars…

These issues were covered also in the news.  Along the way, the courts were used to issue protective orders against this petitioner to fire him from his job.  Petitioner prevailed in federal court and the state had judgment taken against it for retaliation.  The matter is still pending as to the back pay and front pay.

The courts in Nevada using their corrupt judges backdated court filings for the state Attorney General and were caught doing so.  The Reno NBC TV news covered the story and since that time this Petitioner has been harassed by the Nevada and California courts and law enforcement over false criminal charges.  Petitioner fought back legally using non-violent remedies like lawsuits, protests, etc.



## Taxation Department losing tens of millions of dollars a year, ex-employees say

By Ed Vogel LAS VEGAS REVIEW-JOURNAL CAPITAL BUREAU

Source: http://lvrj.com/news/government/taxation-department-losing-tens-millions-dollars-year-ex-employees-say

CARSON CITY — The state is losing tens of millions of dollars a year in tax revenue because of an inefficient computer system that prevents department auditors from reviewing the tax records of companies in a timely manner, according to two former Nevada Taxation Department employees.

They place the blame primarily on a computer system that, while not antiquated, is slower and not user friendly, saying that a new system is needed.

The department's annual report, released Jan. 15, shows 1.24 percent of businesses in the state were audited during the past fiscal year, **almost half the total** in the 2006-07 year, **just before a new $40 million tax accounting system went online.**



Audit Nevada Taxation Department for FRAUD

They also said that mismanagement by former Taxation Director Dino DiCianno has contributed to the department's inability to perform more audits and that he deliberately stopped audits of the mining industry. DiCianno closed the agency's Elko office in June 2010 as part of a cost-cutting plan by former Gov. Jim Gibbons, though the mining industry was booming and the auditor there could have recovered millions in unpaid mining taxes, they said.

DiCianno, who did not return a phone call seeking comments Tuesday, abruptly retired from state government in March, a day after telling legislators that mining companies had not been audited for two years because he lacked qualified auditors to check their records.

Taxation Department executives told legislators that the mining industry operated on a "self-reporting" tax system. After DiCianno's departure, new Gov. Brian Sandoval required the department to undertake mining industry audits.

That work produced $1.2 million in additional revenue from audits in the fiscal year that ended June 30, although the employees said much more could have been secured except for a three-year statute of limitations on unpaid taxes.

Still the employees and their union representative said far more revenue could be secured if the number of audits returned to the total of past years.

**"It is our members' assertion the total number of audits is down because of the computer and software system,"** said Vishnu Subramaniam, executive director of the American Federation of State, County and Municipal Employees Local 4041. "Individuals have to pay their fair share of taxes. We should expect the same from Nevada businesses."

Although no one was critical of his performance, new Taxation Director William Chisel did not return three messages left by the Review-Journal on his office phone over the past week and a half. Sandoval, however, expressed support Tuesday for Chisel, adding it is the director's plan to concentrate audits on companies where the returns can be greater.

"I will have a conversation with the director," Sandoval said. "Mr. Chisel's background is as an auditor. They are developing systems to go after the higher returning entities." Subramaniam arranged for the two former Taxation Department employees to speak with a Review-Journal reporter. They both requested anonymity.

One is still employed in state government. He said he told legislators before the meeting in March that **DiCianno was not having the department audit mining companies.** He said he previously worked for a mining company and is proficient in auditing their records. Instead, he was assigned to audit businesses where the return for the state was far less.

This employee said no net proceeds of minerals audits were performed for 10 years.

**"We did sales tax audits. We did business tax audits. We did everything <u>but</u> net proceeds of minerals,"** he said. "I was stifled by Dino (DiCianno)."

**The other source, who said he is familiar with the computer system, said, "It wasn't right from the beginning. It has been completely dysfunctional." The system will not even properly add up numbers, he said.**

As an example, he said the system software would show a 990 answer for adding up a group of numbers with an actual sum of 1,000. Replacing it with a new system would cost $100 million, he added. Auditors for the Taxation Department do not need

accounting degrees but can take a couple of night courses to qualify for the job, according to the former taxation auditor. He said pay is too low to attract highly qualified people. According to the state Personnel Division, tax auditors are paid $39,108 to $69,029 a year, depending on their experience. A person with a high school degree with previous auditing experience who has completed six credit hours of college accounting classes can be an auditor. "I would always collect or recover five times or more what I earn," he said. "The jobs pay for themselves."

The annual report shows salary expenditures by the Taxation Department increased by about $450,000 to slightly more than $20 million a year in the past fiscal year. Subramaniam said Sandoval needs to take the leadership to ensure the Taxation Department does more audits and businesses know they are being watched so they will pay their taxes, but with a 1.24 percent audit rate, businesses realize they can fudge their taxes with impunity. "The least we could be doing is to ensure that Nevada businesses are paying their fair share in taxes — that they are paying what they're supposed to be paying," Subramaniam said.

Contact Capital Bureau Chief Ed Vogel at evogel@reviewjournal.com or 775-687-3901.

### Nevada Department of Taxation Audits

| Year | Audits | Revenue produced | Pct. of businesses audited |
|---|---|---|---|
| 2010-11 | 1,066 | $16.2 million | 1.24% |
| 2009-10 | 1,254 | 15.0 | 1.35 |
| 2008-09 | 1,397 | 16.2 | 1.51 |
| 2007-08 | 1,346 | 13.4 | 1.45 |
| 2006-07 | 1,994 | 19.3 | 2.08 |
| 2005-06 | 1,668 | 12.45 | 2.32 |

SOURCE: Nevada Department of Taxation annual report, 2010-11

Department Organization and Function (continued)

Compliance staff also conducts investigations to ensure businesses are registered, anonymous tips regarding tax evasion are followed-up, individuals are located through skip tracing, etc. As the need arises, this section may issue tax deficiency notices, approve payment plans, file liens and withholds; and it may close a business as a measure of last resort which includes seizure of assets and subsequent sales of these assets to meet tax obligations. This section also holds taxpayer educational workshops for the public and oversees the Voluntary Disclosure program.

Compliance - Audit section administers a comprehensive audit program to ensure taxpayer compliance. This section is responsible for ensuring financial compliance with laws relating to all of the above named taxes. This section verifies the accuracy of taxpayer credit or refund requests and also administers discovery programs based on a comparison of information from other taxing authorities. Audit staff also assist with taxpayer information and education including proper reporting and record keeping requirements, and conduct taxpayer workshops.

The audit staff conducted 950 sales and use tax audits during Fiscal Year 2011-12. The total net collections from audit billings during this period was $12,742,042. Audits billed may be collected in succeeding fiscal years, set up on payment plans, or may ultimately be reduced through negotiated settlement agreements approved by the Nevada Tax Commission. In addition, based on a 2003 legislative change, audits and other procedures for enforcement must be applied as uniformly as possible, not only among taxpayers subject to a particular tax but also among different taxes, and must consider a weighting of indicators of non-compliance.

The following is a comparison of statistics describing Revenue and Audit sales and use tax activity for the last six fiscal years.



| FISCAL YEAR | NUMBER OF AUDITS | NET COLLECTIONS FROM AUDIT BILLINGS |
|---|---|---|
| 2006-07 | 1,994 | 19,303,760 |
| 2007-08 | 1,346 | 13,422,434 |
| 2008-09 | 1,397 | 16,180,051 |
| 2009-10 | 1,254 | 14,977,785 |
| 2010-11 | 1,066 | 16,168,554 |
| 2011-12 | 950 | 12,742,042 |

| | GROSS SALES AND USE TAXES | COLLECTIONS AS % OF GROSS TAX | AUDIT COVERAGE |
|---|---|---|---|
| 2006-07 | 3,740,336,053 | 0.52% | 2.08% |
| 2007-08 | 3,585,817,879 | 0.37% | 1.45% |
| 2008-09 | 3,122,729,836 | 0.52% | 1.51% |
| 2009-10 | 2,968,104,048 | 0.50% | 1.35% |
| 2010-11 | 3,142,104,568 | 0.51% | 1.24% |
| 2011-12 | 3,344,395,525 | 0.38% | 1.17% |

**NV Taxation 2012 annual report shows worse stats than 2011. Notice the Audit Coverage percentage is down, the number of audits is down and Net collections is down.**

10

In re TODD ROBBEN - Petition for writ of habeas corpus          585

Wednesday, April 4, 2012                                                                                    nevadaappeal.com

# Protesters: Attorney general withholding evidence

Nevada Appeal Capitol Bureau

A group of five protesters staked out the front of the attorney general's office Tuesday, charging that state attorneys have withheld evidence in some cases and improperly manipulated court transcripts in others.

The group was led by Tonya Brown and Ty Robben, both of whom are suing the state over their claims. Brown says false charges were added to her brother's inmate file by a Department of Corrections computer glitch, which she said caused the Parole Board to deny him release. She also says dep-

uty AGs withheld evidence in her brother's case. He later died in prison.

Robben is suing for reinstatement to his job with the Nevada Department of Transportation. He has accused the Carson City court clerk's office of improperly allowed the attorney general's staff to file documents late in his case. He also says staffers manipulated transcripts.

Brown said these are all civil rights violations that should be dealt with. To get attention from drivers passing the AG's office during the lunch hour, they held up a 3-foot high, 20-foot-long banner reading "Crime Scene."



Tonja Brown and Ty Robben demonstrate in front the Attorney General's office regarding the department withholding evidence, a Brady law violation.

JIM GRANT / NEVADA APPEAL



## Massive CRIME SCENE at Nevada Attorney Generals office !!!
WATCHDOWG • 2.6K views • 8 years ago

SEE - http://www.NevadaStatePersonnelWatch.wordpress.com for more information KOLO Reno News covers the Massive ...

https://www.youtube.com/watch?v=gbk0rKPnbfs



### KRNV investigates Nevada Attorney General & Carson City District Court BACKDATING SCANDAL
WATCHDOWG • 1.9K views • 8 years ago

SEE - http://www.NevadaStatePersonnelWatch.wordpress.com for more information KRNV investigates Nevada Attorney General ...



### PEOPLE PROTEST Catherine Cortez Masto + Nevada Attorney General's ABUSE OF POWER
WATCHDOWG • 1.7K views • 8 years ago

SEE - http://www.NevadaStatePersonnelWatch.wordpress.com for more information On April 03, 2012 a group of Nevada citizens ...

https://www.youtube.com/watch?v=O-K9Hhx47LQ





This Petitioner exposed massive corruption on a wide & deep scale in the courts and law enforcement agencies on his websites. Much of this is covered in the record of case # P17CRF0114 in interviews Petitioner gave to investigators.  The news articles cover bits and parts.  What is profound is the massive cover-up of the allegations of child molestation by several judges and others described in the record and the attempt by trial counsel Russell Miller to claim the allegations were false or made-up…

These allegations are serious and normally must be investigated – even if false… Here, Petitioner in his role as an activist in the communities of El Dorado Co. and Carson City, NV with massive press coverage, he learned of all kinds of corruption and wrongdoing.  **Petitioner even has the names of victims that claim to have knowledge of said molestation by various judges and others – yet law enforcement and the FBI fail to even investigate those issues!  Instead, they retaliate against this Petitioner…**

It is true, according to reliable sources these people are all members of the same club …or secret society.  More will come out on this issue in the future.  With Jeffrey Epstein's

scandal coming out, the problem in the various churches (especially the Catholic church) so to will everything else in the realm of judges/prosecutors/police, etc.



## El Dorado Confidential: What Connection does Psycho DA Vern Pierson Have to a Confirmed Sex Offender? (CONTENT WARNING)

Vern Pierson 1 Response »

https://rightondaily.com/2014/01/el-dorado-confidential-what-connection-does-psycho-da-vern-pierson-have-to-a-confirmed-sex-offender-content-warning/

Posted by Aaron F Park at 5:00 am

(This post is rated R due to extremely strong, yet factual content)

An excuse.

If you read the recent column in the In Eldorado County website – you'd realize that a story broken right here on the Right On Daily Blog about former EID GOP leader Ken Steers has a direct nexus to DA Vern Pierson. Apparently, Vern Pierson was a "celebrity" bartender at the event that Steers got lit up at.

It remains to be seen if Vern Pierson will actually prosecute his ally and donor.

What is clear to this blogger is that Pierson is willing to abuse his office to target political opponents. Witness Daniel Dellinger and Cris Alarcon. Both were fingered in an 2011-2012 El Dorado Grand Jury report over a local ballot measure. Since the Grand Jury is shrouded by secrecy, there is no standard for evidence and no way for the accused to know what their recommendation was based on.

**A pedophile?**

I will get to that in a bit – Alarcon and Dellinger ran the campaign for a fire district in El Dorado County. It included some campaign discussion prior the ballot measure, not after. This is the standard.  The Grand Jury / Vern Pierson said that they used public funds for campaigning without

any concern about the fact that case law is clear. It is not possible to campaign for anything prior to there being a ballot measure filed.

Vern Pierson is prosecuting them both based on the recommendation of the Grand Jury that they misappropriated public funds. They were alleged to have done so before the local ballot measure was filed. The case will likely get thrown out – but it appears that Vern is attempting to punish both Alarcon and Dellinger, two of his most effective antagonists.

It also appears that like Ken Steers, El Do County Auditor-Controller Joe Harn is in on the attempted lynching. (That is when they aren't being over-served or over-serving people whilst playing celebrity bartender)

Enter Kevin Hurtado. Hurtado is 45. Hurtado is gay and has a very young boyfriend. Ryan Donner is now 24.

Hurtado and Donner had a run-in with Cris Alarcon and Dan Dellinger which started about four years ago when Donner showed up at a El Do Board of Supervisors Meeting wanting to get involved in local politics.

Like smart operatives – when someone new shows up, you vet them. The vetting revealed that Donner had a boyfriend with a past. That is Kevin Hurtado.

A few months later this Kevin Hurtado offered to help with a boy scout event for the Pollock Pines Chamber. Alarcon outed Hurtado as a sex offender because of the nature of the event.

A story dated 12/19/2001 on the Tahoe Daily Tribune about Hurtado reveals that he was tried related to molesting several young boys:
*Hurtado's victims were all boys between the ages of 10 and 11. It began in 1986 when Hurtado, then in his early 20s, became a counselor at a wilderness camp in Santa Cruz County. Over three summers he molested seven boys. It ended in 1988 when one child reported Hurtado's nighttime activities. Hurtado would orally copulate and masturbate the boys.*
It is rare for local media sources to leave a story up for 12 years. Most of the time, they archive them on microfilm – this story is still easily accessible on the internet. Continuing to quote the story:

*All three psychologists agreed that Hurtado was a pedophile.*
Ultimately, Hurtado completed his parole for his pedophilia conviction from the events in the 1980's. After seeing this story and being alerted to the public outing – I searched a public website and found that Kevin Hurtado is indeed a registered sex offender. It appears that the Hurtado on facebook and in the media story are all the same Kevin Hurtado.

According to accounts, Kevin Hurtado threatened Cris Alarcon.

Somehow, Ryan Donner made his way onto the Grand Jury about a year after the public outing of his boyfriend Kevin Hurtado. (Here is a picture of the two of them together on a cruise, that is dated late 2010)
Ryan Donner served on the 2011-2012 El Dorado Grand Jury. Not coincidentally, they recommended prosecuting Cris Alarcon and Daniel Dellinger over a local ballot measure campaign.

Alarcon and Dellinger have an air-tight case. It appears that Vern Pierson knows this, but is using the "Grand Jury Made me do it" defense.

And Pierson's rampage is based on a Grand Jury that could easily have been influenced by the young boyfriend of a publicly outed pedophile?

Here is the last Irony – Auditor-Controller Joe Harn disbursed $10,000 after reviewing everything related to the local ballot measure campaign! Does that mean Vern Pierson should be prosecuting him too?

Small County Politics can be ugly.

---

## THE NAMES OF AT LEAST 1,000 PEOPLE APPEAR IN SEALED COURT DOCUMENTS

## ASSOCIATED WITH JEFFREY EPSTEIN

Time Magazine - BY MADELEINE CARLISLE   UPDATED: SEPTEMBER 5, 2019

https://time.com/5668489/jeffrey-epstein-sealed-names/

The names of at least 1,000 people appear in sealed court documents associated with Jeffrey Epstein, a court heard on Wednesday. Whether to make them public is the latest skirmish in a years-long legal battle that continues to play out even after Epstein's death.

The revelation came after attorneys for a "John Doe" asked a federal judge in New York not to release the names of people who were not directly involved with the 2015 defamation lawsuit filed by Epstein accuser Virginia Roberts Giuffre against Epstein's longtime confidante Ghislaine Maxwell.

The case was settled in 2017, but the details are only just now emerging. A day before Epstein's death in August, a massive cache of documents from the suit was unsealed—revealing accusations against prominent figures, including former New Mexico Gov. Bill Richardson and former Sen. George Mitchell. Within the files, Giuffre alleged Maxwell acted as Epstein's "madame" and was "one of the main women" whom Epstein used "to procure under-aged girls for sexual activities."



## Former FBI Chief Ted Gunderson Tried To Warn You Of An Elite Satanic Pedophile Network, But You Didn't Listen

Source: https://www.infowars.com/posts/former-fbi-chief-tried-to-warn-you-of-an-elite-satanic-pedophile-network-but-you-didnt-listen/



https://banned.video/watch?id=5f976c72fb2c9201aed56e12



Former FBI Chief Ted Gunderson Exposes Satanic Ritual Child Abuse

https://www.youtube.com/watch?v=Jo3tCUxtm_s

After retiring from the FBI, Gunderson set up a private investigation firm, Ted L. Gunderson and Associates, in Santa Monica. In 1980, he became a defense investigator for Green Beret Doctor Jeffrey R. MacDonald, who had been convicted of the 1970 murders of his pregnant wife and two daughters. Gunderson obtained affidavits from Helena Stoeckley confessing to her involvement in the murders. He also investigated a child molestation trial in Manhattan Beach California. In a 1995 conference in Dallas, Gunderson warned about the supposed proliferation of secret Satanic groups, and the danger posed by the New World Order, an alleged shadow government that would be controlling the US government. He also claimed that a "slave auction" in which children were sold to men in turbans had been held in Las Vegas, that four thousand ritual human sacrifices are performed in New York City every year, and that the 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City was carried out by the US government. Gunderson believed that in the US there is a secret widespread network of groups who kidnap children and infants, and subject them to Satanic ritual abuse and subsequent human sacrifice.



## Ted Gunderson Asking Bill Barr and Assistant AG Robert Mueller III to Look into FBI Obstruction Involving CIA-linked Child Trafficking/Abduction Rings

Sourece: https://theduran.com/ted-gunderson-asking-bill-barr-and-assistant-ag-robert-mueller-iii-to-look-into-fbi-obstruction-involving-cia-linked-child-trafficking-abduction-rings/

Ted retired from the FBI in about 1980 and set up a private investigation firm that worked on murder and missing persons cases. He is most known for his work related to exposing child sex trafficking and exploitation rings, including the McMartin pre-school case, the Finder's Cult and case of the abduction of Johnny Gosch. Despite Ted's voluminous output of information, including books and videos, and seemingly sincere demeanor, he still has his detractors and their has remained some controversy concerning who he actually worked for and what his true mission was.

Setting Gunderson's sincerity aside, we thought these letters to Bill Barr and Robert Swan Mueller III were noteworthy.

# David Icke's book "The Biggest Secret"

"What the victims have told me would be almost unbelievable were it not coming from so many different, unconnected sources and were not the stories across the world not telling the same basic tale, even down to the details of the rituals and the mind programming techniques. The children, and the traumatized adults they become, have nowhere to turn. **Their stories are so astonishing that few believe them and they are frightened of going to the police because they know that <u>the Satanic network includes top police officers, judges, civil servants, media people, politicians, and many others who control our 'free' society</u>**.



Questions like "Who are you going to tell?" and "Where are you going to run?" are used to break their spirit. Their sense of hopelessness makes them think there is nothing they can do to seek justice, so they give up and stop trying.

**The vast majority of Freemasons are not Satanists or child abusers, but there is a far greater ratio of them in secret societies like the Masons, than outside.**

**How can you have confidence in justice therefore when, for instance, the Manor of St James's Freemasonry Lodge, No 9179, consists of the leading operational police officers from all the major units of London's Metropolitan Police, including the Anti-Terrorist Squad, Fraud Squad, and the Complaints Investigations Branch which is supposed to investigate allegations of police wrong-doing!**

The St James's Lodge further includes senior figures from the Home Office, judiciary, and the Directorate of Public Prosecutions, **which decides if a person will or will not be prosecuted. The whole 305 system of investigation, prosecution, and trial, or the suppression of them, can be achieved by members of this one lodge working together.** What chance has a child got against that?

*"I can understand people finding it difficult to believe, it's extraordinary, but yet, everything is showing that it is happening. Young kids are drawing pictures of the type of thing that don't come on TV. I've been dealing with this for the last two years, I've come across many cases of ritualistic abuse and a lot of it happens all over the place; people have really got to wake up."* (Quoted Blasphemous Rumours, p 30.)

==Satanic ritual abuse is a global network, another pyramid of interconnecting groups, with the high and mighty of society among their==

**numbers, top politicians, government officials, bankers, business leaders, lawyers, judges, doctors, coroners, publishers, editors and journalists. All the people you need, in fact, to carry out and cover up your rituals and crimes against humanity.** It is not that researchers see Satanists everywhere. The ratio of them in leading positions is very high because that's the way it is meant to be. The Satanic networks control the system and so they ensure that there is a far, far, higher ratio of Satanists in positions of power than there are in the general population.

The higher you go up the pyramids, the more Satanists you find. Most of the non-Satanists are filtered out before they reach those levels. The result of all this for the children involved is beyond the imagination of anyone who has not experienced the level of trauma that they must suffer.

**The network has among its number, via its countless secret societies, the leading judges, policemen, politicians business people, top civil servants, media owners and editors.** Under these kings and generals of the network come the corporals and the foot soldiers who have no idea of the scale of the Agenda they are involved in. If the Brotherhood want someone framed, prosecuted, or murdered, it happens. **If they want one of their people protected from prosecution, it happens.** If they want a controversial proposal like a new road, a building or law change to be approved, they make sure one of their guys is appointed to head the official 'inquiry' to make the decision they want.

This network selects the prime ministers through their manipulation of all political parties and appoints the leading government officials. The Black Nobility networks do the same in other countries, including, no, especially, in the United States. See .. .*And the Truth Shall Set You Free* for details of this.

**Bohemian Grove – from "The Biggest Secret"**

There is a sexual playground for leading American and foreign politicians, mobsters, bankers, businessmen, top entertainers, etc, who are initiates of the Babylonian Brotherhood. **It is called Bohemian Grove, 75 miles north of San Francisco in California**, near the hamlet of Monte Rio alongside the Russian River in Sonoma County.

**I went to the area in 1997 to have a look around and when I told the hotel receptionist where I was going she warned me to be very careful because some people who had been to investigate had never been seen again. Here at Bohemian Grove, Cathy, and others I have interviewed, say they were forced to serve the perversions of their abusers. These include Satanic rituals, torture, child sacrifices, and blood drinking, which take place on the exclusive 2,700 acre estate in among the redwood trees.** As Cathy says in her book: "Slaves of advancing age or with failed programming were ritually murdered at random in the wooded grounds of Bohemian Grove and I felt it was only a matter of time until it would be me".26 She says the Grove has a number of rooms for different perversions including a

Dark Room, a Leather Room, a Necrophilia Room, and one known as the Underground Lounge, spelt as 'U.N.derground' on the sign.

I've seen a covertly taken picture of robed men at Bohemian Grove standing alongside a large fire worshipping a 40 foot stone owl (see picture section). The owl is the symbol of Moloch or Molech, an aspect of Nimrod/Baal. Moloch demands the sacrifice of children and it was to this deity that the children of the Babylonians, Hebrews, Canaanites, Phoenicians and Carthaginians, were sacrificially burned. This picture provided visual support for the claims over many years that Druid rituals were being performed at the Grove with people in red robes marching in procession chanting to the Great Owl, Moloch. The Romans called the owl by the same word that meant witch. The Greeks said the owl was sacred to Athene, the ancient Mesopotamian 'Eye Goddess', and her staring owl-like images have been found throughout the Middle East.27 The owl was also the totem of Lilith, the symbol of the bloodline genes passed on through the female, and other versions of the triple goddess of the Moon. The owl has been symbolized as a witch in bird form and is associated with witches in the symbols of Halloween.

The symbolism of being able to see in the dark and with a 360 degree range of vision are also appropriate for a Brotherhood deity. These world famous Brotherhood initiates at Bohemian Grove burn a Celtic wicker effigy at the start of their 'camp' to symbolize their 'religion'. The population of Britain has been manipulated into doing the same every November 5th when effigies of Guy Fawkes are burned to mark the day on which he tried to blow up Parliament.

A local community newspaper, The Santa Rosa Sun, reported in July 1993 about the Cult of Canaan and the legend of Moloch at Bohemian Grove, but police investigations into alleged murders on the site have predictably led nowhere. **Regular attendees at Bohemian Grove are known as 'grovers' and among them are people like George Bush; Gerald Ford; Henry Kissinger; Dick Cheney; Alan Greenspan, the head of the Federal Reserve; Jack Kemp (Bob Dole's running mate at the 1996 US election); Alexander Haig, the former Defense Secretary; Casper Weinberger and George Shultz, former Secretaries of State; and a long list of the best known politicians, businessmen, media people, and entertainers in the world, let alone America.** Steve Bechtel, the head of the world's biggest construction company, attended Bohemian Grove in the 1980s while his company enjoyed massive contracts thanks to the spending decisions of the World Bank and its president A. W. Clausen, another 'grover'. According to researchers, there is a waiting list of some 1,500 people anxious to pay the initiation fee of $2,500 and annual dues of $600.

This is a 'summer camp' and Satanic centre for the Elite who run the planet and this is where many of the real decisions are made before they become public. I have a picture from 1957 of Ronald Reagan and Richard Nixon sitting at a table at Bohemian Grove listening to Dr Glenn Seaborg, who was involved in the discovery of plutonium and worked on the Manhattan Project which produced the bombs that were dropped on

Japan. Doctor Edward Teller, the 'father of the H-bomb', was also a member. Both Reagan and Nixon, part of this Elite Satanic club more than 40 years ago, would go on to become presidents of the United States. In fact, every Republican president since Herbert Hoover in 1945 has been a member and most Democrats, including Bill Clinton.

It was in Sonoma County, not far from Bohemian Grove, that 12-year-old Polly Klaas was murdered, quite obviously by Satanists, in October 1993. She was kidnapped from her bed while her mother and sister slept in the next room. Her grandfather, Joe, had publicly endorsed a book called Breaking The Circle Of Satanic Ritual Abuse by the former Satanist, Daniel Ryder. It exposed the ties between Satanists and the mind control programmes MKUltra and Project Monarch. While a man was reluctantly charged with Polly's murder, the facts point conclusively to a retaliation by the Satanists against her grandfather. A woman called the FBI to say she had escaped from a coven in Sonoma County and that Polly might be killed as part of a five-day Satanic Halloween Festival. She said Polly might be found near the Pythian Road on Highway 12 which, coincidentally, is close to a 1,600 acre spread called the Beltane Ranch. The FBI ignored this warning and Polly's body was later found near the Pythian Road. She had been sexually assaulted and decapitated, but the authorities claimed she had been strangled. The man who kidnapped her, **Richard Alan Davis, was not even charged with the murder by the Sonoma County District Attorney's office until they were forced to act by protests from police officers.**

## Corey Feldman To Release Documentary On The 'Biggest Problem In Hollywood' – Pedophilia

https://davidicke.com/2020/02/17/corey-feldman-release-documentary-biggest-problem-hollywood-pedophilia/

'The topic of pedophilia and the trafficking of children has gained a lot of attention within the past year alone, more than we've ever seen from the mainstream. This is due in large part to revelations like the entire Jeffrey Epstein/Prince Andrew Saga, which brought even more attention to this issue. Another example is the rampant child porn haring that's been happening within the Pentagon.

And so there is a growing awareness to the fact that this type of activity is going on in places of high power amongst many people who seem to be above the law. Fortunately we have seen some prosecutions, like the recent conviction of the Vatican's Cardinal George Pell for sexually abusing children. The list is long. In fact, more details have emerged suggesting that one of Epstein's main jobs was to entrap high profile people into committing these very types of crimes.

This Petitioner has been accused of being a threat to the very people who have an interest in suppressing his voice (and his life, liberty & freedom).  This Petitioner shown tremendous restraint by not retaliating against anyone despite the amount of violence and corruption used against him (and his family) by the police, prosecutors & judges involved (many of which are all part of the "brotherhood" explained above) and that story will come out very soon.

Although this Petitioner has used strong language – he is fully protected under the first amendment. As the United States erupts with protests/riots/chaos over police killing unarmed black citizens and  ANTIFA (ANTI Fascist)  and BLM (Black Lives Matter) movements take control of politics and press coverage which demonstrate a massive collective consciousness in major cities across the globe and even small towns including Placerville, So. Lake Tahoe and Carson City, NV.  People are calling for reform and even defunding the police, abolishing the courts, releasing violent prisoners.  Indeed, the world has woken up and some kind of reform is being demanded by all political parties.

**This Petitioner is not affiliated with ANTIFA or BLM or any organized militia, Boogaloo movement, alt-right, etc.** This Petitioner considers himself a "Constitutionalist" and he respects a Constitutional Sheriff such as El Dorado Co. John D'Agostini and similar Oath Keepers who respect the God given rights of the People unlike D.A. Vern Pierson and his deputy D.A. Dale Gomes and a few judges named in this petition.

This Petitioner has a problem with tyrants who abuse their power, corrupt cops, corrupt D.A.s, corrupt lawyers and corrupt judges (oath breakers) who destroy people and their families under the guise of law enforcement.  Petitioner has problems with child molesters, and in particular, those who act under the color of law or in a church to exploit their victims.


# JUDGE STEVEN BAILEY ISSUED UNLAWFUL WARRANT AND ORDERS AFTER BEING DISQUALIFIED


Judge Steve Bailey recused on/about 04/11/2016 in  case # P16CRM0096.  Then, after being recused, Judge Bailey issued an order assigning Special Master Michael McLaughlin on

06/21/2016 and Judge Bailey issued a search warrant on 06/21/2016 to obtain Petitioner's computer and cell phone for what would become case #  P17CRF0114

==The exhibits below show that Judge Steve Bailey's warrant was used to unlawfully search and seize Petitioner's cell phone, computer and date in violation of U.S. 4th Amendment. Any information gathered and used in the investigation, grand jury and at trial was inadmissible. Petitioner did file a CJP  ethics complaint against Judge Steve Bailey from jail. A lawful warrant was required for a cell phone and computer search.==  See _Riley v. California_, _134 S. Ct. 2473 - Supreme Court 2014_ the U.S. Supreme Court held that a warrant is generally required to search a cell phone seized incident to arrest. _573 US at 401, 403._

==Failure to raise 4th Amendment claims of illegally obtained evidence may amount to ineffective assistance of counsel if the claim of illegal evidence is meritorious and there is a reasonable probability that the defendant would not have been convicted if his 4th Amendment rights had been respected.== _Kimmelman v. Morrison_ 477 U.S. 365, 375, 106 S. Ct. 2574, 2582–83, 91 L. Ed. 2d 305, 319 (1986). (holding that restrictions on federal habeas review of Fourth Amendment claims announced in _Stone v. Powell_ do not extend to Sixth Amendment claims of ineffective assistance of counsel where "the principal allegation and manifestation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment") **("Where defense counsel's failure to litigate Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").**

```
UTSCASPRT          EL DORADO COUNTY SUPERIOR COURT                   Page:    37
 7/18/16                        CASE PRINT
---------------------------------------------------------------------------
ASE NUMBER:     S16CRM0096                    DEFENDANT STATUS: Appeal
RREST NBR :                                   ARREST DATE ....:  3/21/16
RREST AGY : SOUTH LAKE TAHOE POLICE
efendant .: ROBBEN, TODD CHRISTIAN                       Defn :  1 of   1
=============================================================================
              . which he is entitled under CCP 170.6.
                -------
                Although defendant's motion is procedurally
                defective; given his status as a self-represented
                litigant; the court will accept his motion and
                deem it filed and served as of Monday 4/18/16.
                -------
                Having considered the matter; this
                judicial officer believes his recusal would
                further the interests of justice.
                -------
                (See CCP 170.1 subd. (a)(6)(A)(i).)
                Judge Steven C. Bailey hereby recuses
                himself (See ibid.)
                -------
                Pursuant to CCP section 170.1(a)(6)(3) &
                CCP 170.3(c)(1) and CCP 170.6 and
                170.8 the above entitled matter referred
                to Judge James Wagoner for reassignment.
                -------
                All previously set dates are hereby vacated.
                -------
                CUSTODY STATUS
                O.R./Conditional O.R. Release continued
                -------------------------
                CC: Todd Robben 1051 Pebble Beach Ct.
                Minden NV 89423
                -------
                CC: District Attorney's Office SLT via court box
                -------------------------
                =================MINUTE ORDER END=================
                ==================MINUTE ORDER END===========
                ==================MINUTE ORDER END===========
                ==================MINUTE ORDER END===========
                ==================MINUTE ORDER END===========
                -------------------------
                JT hearing set on 05/09/2016 at  8:30 is VACATED
                due to 170.1 CCP.
                -------------------------
                PTC hearing set on 04/26/2016 at  8:30 is VACATED
                due to 170.1 CCP.
                -------------------------
                MX3 hearing set on 04/26/2016 at  8:30 is VACATED
                due to 170.1 CCP.
                -------------------------
                MX2 hearing set on 04/26/2016 at  8:30 is VACATED
                due to 170.1 CCP.
```

```
SCASPRT          EL DORADO COUNTY SUPERIOR COURT
   7/18/16                      CASE PRINT                          Page:    38
--------------------------------------------------------------------------------
CASE NUMBER:    S16CRM0096                DEFENDANT STATUS: Appeal
ARREST NBR :                              ARREST DATE ....:  3/21/16
ARREST AGY : SOUTH LAKE TAHOE POLICE
Defendant .: ROBBEN, TODD CHRISTIAN                    Defn :  1 of   1
================================================================================
            ------------------------
            MX1 hearing set on 04/26/2016 at  8:30 is VACATED
            due to 170.1 CCP.
            ------------------------
  4/11/16   EX PARTE MOTION TO STRIKE PLAINTIFF'S EX MOTION
            FILED
            ------------------------
            MAILING ADDRESS CHANGE FOR TODD ROBBEN FILED
            ------------------------
            Notice of Motion to Suppress Evidence & Motion
            FILED
            ------------------------
            MOTION FOR PEREMPTORY CHALLENGE FILED
            ------------------------
        4   EX-PARTE MINUTE ORDER RE: MOTION FOR PEREMPTORY    Dispo
            CHALLENGE
            Honorable JUDGE STEVEN C. BAILEY presiding
            Clerk: J. Incopero
            ------------------------
            On 04/21/16 defendant filed a timely motion
            pursuant to CCP 170.6 against the
            Honorable Suzanne N. Kingsbury.
            -------
            The Honorable Judge then referred the matter
            to the Assistant Presiding Judge for reassignment.
            -------
            Thereafter on 04/05/16 Assistant Presiding
            Judge James R. Wagoner assigned the matter
            to the Honorable Steven C. Bailey.
            -------
            On 04/11/16 defendant filed a motion pursuant
            to CCP 170.6 seeking to disqualify the
            Honorable Steven C. Bailey from hearing
            the matter.
            -------
            The matter was filed with the statutory time
            frame but for other reasons is denied.
            -------
            Pursuant to CCP 179.6(a)(4) a party is permitted
            one challenge.
            -------
            Defendant has already filed a timely motion
            to disqualify Judge Kingsbury.
            -------
            Therefore having exercised a challenge
            defendant has exhausted his challenges.
            -------
```

In re TODD ROBBEN  -  Petition for writ of habeas corpus          601



```
SCASPRT          EL DORADO COUNTY SUPERIOR COURT           Page:    20
7/18/16                    CASE PRINT
                                        -----------------------------------
CASE NUMBER:     S16CRM0096              DEFENDANT STATUS: Appeal
ARREST NBR :                            ARREST DATE ...:  3/21/16
ARREST AGY : SOUTH LAKE TAHOE POLICE
Defendant .: ROBBEN, TODD CHRISTIAN               Defn : 1 of  1
=================================================================

           ------------------------
 6/21/16   Jurisdiction reset to Placerville
           ------------------------
           Jurisdiction reset to SLT
           ------------------------
     4     EX-PARTE MINUTE ORDER RE: SPECIAL MASTER APPOINTED Dispo
           Honorable JUDGE STEVEN C. BAILEY presiding
           Clerk: J. Incopero
           ------------------------
           COURT ORDERS:
           Court appoints Michael McLaughlin to be
           Special Master regarding the search
           warrant signed by this court on 6/21/16.
           -------
           Michael McLaughlin has accepted the
           appointment as Special Master.
           -------
           Upon conclusion of the obligation of the
           Special Master; Mr. McLaughlin to submit
           billing for reimbursement to the court.
           ---
           CUSTODY STATUS
           Defendant remains remanded to the custody of the
           Sheriff.
           ------------------------
           Judge's signature _____
           The Honorable Steven C. Bailey
           ------------------------
           ------------------------
           CC: Michael McLaughlin via attorney's box
           ===================MINUTE ORDER END==========
           ------------------------
 6/17/16 7 HEARING RE: Appointment of Counsel (Pre-Dispo)   Dispo
           Honorable Judge DOUGLAS C. PHIMISTER presiding
           Clerk: DAROS
           Court Reporter: Linda A Street CSR 8256
           Bailiff B Schaub
           ------------------------
           Defendant is present IN CUSTODY.
           Deputy District Attorney D. Gomes present.
           Defendant proceeds in Propria Persona.
           ------------------------
           The Defendant requests an attorney be appointed
           Motion is GRANTED.
           Public Defender Appointed.
           Public Defender declares a conflict.
           Public Defender is RELIEVED as Attorney of Record.
```

**CERTIFIED COPY**

# SUPERIOR COURT OF CALIFORNIA
## County of El Dorado



### SEARCH WARRANT

Electronic Communications
Device In Police Custody
Penal Code §§ 1524.3; 1546 et seq.

**The People of the State of California**
**To Any Peace Officer in El Dorado County**                Warrant No. *S16SW0079*

**ORDER:** An affidavit by Investigator Bryan Kuhlmann, which was sworn to and subscribed before me on this date, has established probable cause for the issuance of this search warrant which you are ordered to execute in the manner below.

**Place(s) to be searched:** *El Dorado County District Attorney's Office Evidence Storage, South Lake Tahoe Office, 1360 Johnson Blvd., Suite #105, South Lake Tahoe, CA 96150*

1) **Device(s) to be searched and seized:** White Samsung Galaxy S4 cell (model SCH-1545V, Serial# 256691488206366516, IMEI#990003426125346) phone collected from Todd Robben on 6/15/16 and now in law enforcement custody in the El Dorado County District Attorney's Office evidence room in South Lake Tahoe.

2) Black Dell inspirion 15 laptop computer, Serial #3JHQ912 collected from Todd Robben on 6/15/16 and now in law enforcement custody in the El Dorado County District Attorney's Office evidence room in South Lake Tahoe.

**Evidence to be seized:**

1) For the following property and evidence located <u>within</u> the device White Samsung Galaxy S4 cell (model SCH-1545V, Serial# 256691488206366516, IMEI#990003426125346) pertaining to the threats to SLT City Attorney Tom Watson, SLTPD Sgt. Laney, and SLTPD Ofc. Webber:

    A.  Data that may identify the owner or user of the above-described cellular communication device(s).
    B.  Address books and calendars.
    C.  Audio and video clips from 3/21/16 through 6/15/16.
    D.  Call histories and call data from 3/21/16 through 6/15/16.
    E.  Photographs and associated metadata from 03/21/16 through 6/15/16.
    F.  Text messages (SMS), multimedia messages (MMS), chats, Kik messges, recorded messages and subscriber information modules [SIM cards].
    G.  E-mail messages and attachments, whether read or unread from 3/21/16 through 6/15/16.
    H.  Messaging Apps, KIK, Snapchat, Voxer, Whatsapp, Trillion, Imo messenger, Ebuddy, Viber, Kakko, Skype, Tango, Line from 03/21/16 through 6/15/16.

Page 1 of 3

H. Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords from 3/21/16 through 6/15/16.

I. Global position system (GPS) data including, but not limited to coordinates, way points and tracks from 3/21/16 through 6/15/16.

J. Documents and other text based files.

K. Voicemails stored on the device from 3/21/16 through 6/15/16.

L. Notes

M. Binary Code, ASCII Code, Meta Data, deleted data, deleted folders.

With respect to the above items listed above and its subsections above, the executing law enforcement officer(s) is\are authorized to view, photograph, record, copy, forensic image and conduct forensic analysis of any and all data, programs and applications on the above-described cellular communication device(s), as well as on any data storage devices and or mediums attached to those cellular communication device(s) relevant to this investigation.

2) For the following property and evidence located <u>within</u> the device Black Dell Inspirion 15 laptop computer, Serial #3JHQ912:

A. Data that may identify the owner or user of the above-described laptop computer.

B. Address books and calendars.

C. Email messages and attachments, whether read or unread from 3/21/16 through 6/15/16.

D. Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords from 3/21/16 through 6/15/16.

E. Documents and other text based files.

F. Binary Code, ASCII Code, Meta Data, deleted data, deleted folders.

With respect to the above items listed above and its subsections above, the executing law enforcement officer(s) is\are authorized to view, photograph, record, copy, forensic image and conduct forensic analysis of any and all data, programs and applications on the above-described laptop computer relevant to this investigation.

**Evidence classification:** The electronic communications and/or data described above is evidence of a crime as follows: *[Check one or more]*

X It tends to prove that a felony was committed

X It tends to prove that a particular person committed a felony

☐ It tends to prove that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under the age of 18 years has occurred or is occurring

**Additional orders** (If checked)

X **Off-Site Search Authorization:** If the device(s) described above is found in the place described above, it may be removed from the premises and searched at a secure location. Officers may, if necessary, seek the assistance of a civilian expert in this field to conduct the search.

X **Special Master:** The court authorizes the appointment of a Special Master pursuant to Penal Code section 1524, subdivision (d), to conduct the aforementioned search at the site listed on this Search Warrant. The Special Master shall accompany searching Peace Officers during the service of this Search Warrant. The Special Master shall seize any material that relates to a privilege, but is otherwise approved for seizure by this Search Warrant. The material shall be placed in a container and sealed, to be held and inspected by the Special Master, pending

Page 2 of 3

further order of the Special Master and / or the Court issuing this Search Warrant. If the data is in electronic form, the Special Master shall issue specific instructions for the search of the storage medium, in the Special Master's discretion. The cost of any Special Master shall be incurred by the Court, consistent with *People v. Laff, (2001) 25 Cal.4th. 703, 737-744.*

**Disposition of communications and/or data:** Pursuant to Penal Code §§ 1528(a), 1536. all devices, communications, and/or data seized pursuant to this search warrant shall be retained in Affiant's custody pending further court order.

6/21/16 @ 10:03 AM
Date

Judge of the Superior Court

Steven C. Bailey

This is a true certified copy of the records if it bears the seal, imprinted in purple ink, the date of issuance and an original signature.

JUN 21 2016

El Dorado County, California
By _____
Deputy Clerk

Page 3 of 3

In re TODD ROBBEN  -  Petition for writ of habeas corpus    605

**NOTICE OF EXECUTION OF SEARCH WARRANT
ELECTRONICS COMMUNICATIONS/DEVICE**

AGENCY NAME: El Dorado County District Attorney's Office

AGENCY ADDRESS: 1360 Johnson Blvd. Suite #105, SLT, CA 96150

Dear: Todd Robben

Records or information concerning your electronic communication(s)/device information held by the entity named in the attached search warrant were obtained by the El Dorado County District Attorney's Office pursuant to a search warrant issued by the Honorable Judge ___BASLEY___ , Judge of the El Dorado County Superior Court.

These records were requested for a criminal investigation pertaining to the a death threats investigation

1) The property seized is: For the following property and evidence located within the device White Samsung Galaxy S4 cell (model SCH-1545V, Serial# 256691488206366516, IMEI#990003426125346) pertaining to the threats to SLT City Attorney Tom Watson, SLTPD Sgt. Laney, and SLTPD Ofc. Webber:

    A.  Data that may identify the owner or user of the above-described cellular communication device(s).

    B.  Address books and calendars.

    C.  Audio and video clips from 3/21/16 through 6/15/16.

    D.  Call histories and call data from 3/21/16 through 6/15/16.

    E.  Photographs and associated metadata from 03/21/16 through 6/15/16.

    F.  Text messages (SMS), multimedia messages (MMS), chats, Kik messges, recorded messages and subscriber information modules [SIM cards].

    G.  E-mail messages and attachments, whether read or unread from 3/21/16 through 6/15/16.

    H.  Messaging Apps, KIK, Snapchat, Voxer, Whatsapp, Trillion, Imo messenger, Ebuddy, Viber, Kakko, Skype, Tango, Line from 03/21/16 through 6/15/16.

    H.  Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords from 3/21/16 through 6/15/16.

    I.  Global position system (GPS) data including, but not limited to coordinates, way points and tracks from 3/21/16 through 6/15/16.

    J.  Documents and other text based files.

    K.  Voicemails stored on the device from 3/21/16 through 6/15/16.

    L.  Notes

    M.  Binary Code, ASCII Code, Meta Data, deleted data, deleted folders.

With respect to the above items listed above and its subsections above, the executing law enforcement officer(s) is\are authorized to view, photograph, record, copy, forensic image and conduct forensic analysis of any and all data, programs and applications on the above-described cellular communication device(s), as well as on any data storage devices and or mediums attached to those cellular communication device(s) relevant to this investigation.

2) For the following property and evidence located <u>within</u> the device Black Dell Inspirion 15 laptop computer, Serial #3JHQ912:

   A.  Data that may identify the owner or user of the above-described laptop computer.
   B.  Address books and calendars.
   C.  Email messages and attachments, whether read or unread from 3/21/16 through 6/15/16.
   D.  Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords from 3/21/16 through 6/15/16.
   E.  Documents and other text based files.
   F.  Binary Code, ASCII Code, Meta Data, deleted data, deleted folders.

With respect to the above items listed above and its subsections above, the executing law enforcement          officer(s) is\are authorized to view, photograph, record, copy, forensic image and conduct forensic analysis of any and all data, programs and applications on the above-described laptop computer relevant to this investigation.

If you wish further information you may contact: Investigator Bryan Kuhlmann

Dated: 6-22-16                    _____ DA42
                                    Investigator

Attachment: Search Warrant No. S16SW0079

Notice Served by: Strader DA45

             on: 6-22-16

             Method of service: PERSONAL AT JAIL (CJ 168)

1  FELDMAN McLAUGHLIN THIEL LLP
   Michael J. McLaughlin, State Bar No. 161044
2  178 U.S. Highway 50, Suite B
   Post Office Box 1309
3  Zephyr Cove, NV 89448
   (775) 580-7431 (Telephone)
4  (775) 580-7436 (Facsimile)
   mike@fmttahoe.com (Email)
5
   Appointed Special Master
6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF EL DORADO

10

11  STATE OF CALIFORNIA,              Case No: S16CRM0096

12                  Plaintiff,        **REPORT OF SPECIAL MASTER AND
                                      PROPOSED ORDER**
13  v.

14  TODD CHRISTIAN ROBBEN,

15                  Defendants.

16

17       The above-captioned Court signed a search warrant (Warrant No. S16SW0079) on June

18  21, 2016, authorizing the search and seizure of a white Samsung Galaxy S4 cell phone and a

19  black Dell Inspiron 15 laptop computer (the "storage mediums"), both collected from Defendant

20  Todd Robben on June 15, 2016.  The search warrant requested that the Court appoint a special

21  master to conduct an initial search of the storage mediums, to determine if any materials stored

22  in electronic form are privileged, and to issue specific instructions for the law enforcement's

23  search of the storage mediums to protect the privileged materials from disclosure to law

24  enforcement.  The undersigned was appointed special master in the above-captioned action

25  pursuant to the minute order entered herein on June 21, 2016.

26       Thereafter, forensic images of the hard drives of the storage mediums were procured and,

27  on August 8, 2016, a second search warrant (S16SW0100) was issued by the Court authorizing

28

                                        1
                      Report of Special Master and Proposed Order

the search and seizure of the forensic images and authorizing the engagement of a forensic expert to assist in the search.

Thereafter, the special master engaged Don Vilfer with Califorensics as forensic expert for purposes of processing and categorizing files located on the forensic images of the storage mediums to assist the special master in reviewing the data to determine what, if any, data is protected from disclosure.

<u>BLACK DELL INSPIRON 15 LAPTOP COMPUTER</u>

Attached hereto as <u>Exhibit 1</u> is a document prepared by the expert and captioned as "Robben Potentially Privileged File List," which contains a list of all data extracted from the computer hard drive and considered to be potentially privileged. The special master has reviewed all materials identified on the Robben Potentially Privileged File List.

The materials have been highlighted in either yellow or orange. Yellow indicates the materials are protected from disclosure by the work product doctrine or the attorney-client privilege. Orange indicates that the materials are not protected.

A substantial portion of the items extracted from the computer are pleadings that are unsigned, appear to be in draft form or otherwise do not have any indication that they were actually filed with any court. Accordingly, the special master cannot determine whether these items are a part of the public record. If the pleadings were filed, then law enforcement can obtain copies from court files. If the pleadings were not filed, then they are Mr. Robben's work product.

"The work product privilege bars the use of statutory discovery procedures to obtain '[a] writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories' (Code Civ. Proc., § 2018.030, subd. (a)), and bars discovery of '[t]he work product of an attorney, other than a writing,' unless denial of discovery would unfairly prejudice a party. (Code Civ. Proc., § 2018.030, subd. (b).) This privilege reflects 'the policy of the state to … [¶] (a) [p]reserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases[; and] [¶] (b) [p]revent attorneys from taking

2

1    undue advantage of their adversary's industry and efforts.' (Code Civ. Proc., § 2018.020.)"

2    *People v. Smith* (2007) 40 Cal. 4th 483, 515.

3        Litigants appearing *in propria persona* may assert the work product privilege. *Dowden v.*

4    *Superior Court* (1999) 73 Cal. App. 4th 126, 128, 136.  The pleadings highlighted in yellow on

5    the Robben Potentially Privileged File List are Mr. Robben's work product.

6        Several of the items extracted are Mr. Robben's notes, research and other materials

7    containing Mr. Robben's impressions, conclusions, opinions, or legal research or theories and, as

8    such, they are also protected by the work-product doctrine.  The following items are protected by

9    the attorney-client privilege and are the work product of attorneys Adam Spicer and/or Adam

10   Clark:

11           (i)     DUI Questuionnaire.docx;

12           (ii)    DUI Questionnaire.pdf;

13           (iii)   Robben – 1538 (bad stop, detention and arrest).doc;

14           (iv)    Robben Appeal Final Draft (1).pdf;

15           (v)     Robben Appeal Final Draft (2).pdf;

16           (vi)    Robben Appeal Final Draft (3).pdf; and

17           (vii)   Robben Appeal Final Draft.pdf

18        Accordingly, the materials referenced above (and marked in yellow on the Robben

19   Potentially Privileged File List) are protected from disclosure by the work product doctrine

20   and/or attorney-client privilege, as noted.  These materials shall be removed or deleted from the

21   forensic image of the computer hard drive by the forensic expert.  Once removed, the forensic

22   image of the computer hard drive may be delivered to El Dorado County District Attorney

23   Investigator Bryan Kuhlmann for inspection in accordance with the search warrants.[1]

24        The materials identified below (and marked in orange on the Robben Potentially

25   Privileged File List) are not protected from disclosure and may remain on the forensic image of

26   the computer hard drive:

27

28
_____
[1] Note that the materials identified as ".tmp" files (such as "WRL0004.tmp") are Word documents saved
in the temporary file folder on the computer and all consist of drafts of pleadings.

| | File | Description of Document |
|---|---|---|
| 1 | | |
| 2 | 14111215.doc | Tentative Ruling on Petition for Name Change, Case No. MSN15-1478, Costa Contra County Probate Court |
| 3 | | |
| 4 | 15-main.pdf | Conformed copy of Defendants' Reply in Support of Motion to Dismiss, *Robben v. Carson City, et al.*, Case No. 15-cv-00529-MMD-VPC, United States District Court, District of Nevada |
| 5 | | |
| 6 | A9R1fg8bfs w8fjss 2wc.pdf | City of South Lake Tahoe Police Department Citizen's Personnel Complaint form (blank) |
| 7 | | |
| 8 | Certify (1).pdf | Appeal Not Selected Notice from Court of Appeal Third Appellate District to Todd Robben and Andrea R. Austin (Office of the State Attorney General), *Robben v. Department of Motor Vehicles*, C080542, Calaveras County No. 15CV40748 |
| 9 | | |
| 10 | | |
| 11 | Docket 53 (1) (1).doc | Word copy of conformed copy of Defendants' Renewed Motion For Summary Judgment, *Robben v. Carson City, et al.*, Case No. 3:13-cv-00438-MMD-VPC, United States District Court, District of Nevada |
| 12 | | |
| 13 | | |
| 14 | Docket_53.txt | Copy of conformed copy of Defendants' Renewed Motion For Summary Judgment, *Robben v. Carson City, et al.*, Case No. 3:13-cv-00438-MMD-VPC, United States District Court, District of Nevada, saved to Notepad |
| 15 | | |
| 16 | | |
| 17 | Interview #1 w Thompson.AVI | Video of Detective Gomes interview with Chris Thompson, 03/12/2014 |
| 18 | PICT0005 2014.01.18 22.33.28.AVI | Video of interview (unknown), 01/18/2014 |
| 19 | PP10UC EE_ER Retiremt-13.doc | Pay Policy 10, Unclassified Employees On Employee/Employer Paid Retirement, Compensation Schedule, Effective: January 01, 2013 |
| 20 | | |
| 21 | | |
| 22 | R62039089-20140119124533.asf | Video interview (unknown), 01/09/2014 |
| 23 | R62039211-20140121085711.asf | Video interview (unknown), 01/21/2014 |
| 24 | R62039211-20140129083455.asf | Video interview (unknown), 01/29/2014 |
| 25 | robben v carson city MSJ order.doc | Word copy of Order re Summary Judgment, *Robben v. Carson City, et al.*, Case No. 3:13-cv-00438-MMD-VPC, United States District Court, District of Nevada |
| 26 | | |
| 27 | robben v carson city MSJ order.pdf | Pdf copy of Order re Summary Judgment, *Robben v. Carson City, et al.*, Case No. 3:13-cv-00438-MMD-VPC, United States District Court, District of Nevada |
| 28 | | |